Per Curiam
: This case was referred to Trial Commissioner Franklin M. Stone with directions to make findings of fact *474 and recommendation for conclusions of law under tbe order of reference and Buie 134 (li). The commissioner has done so in an opinion and report filed on May 24,1971. Exceptions to the commissioner’s report were filed by plaintiff and the case has 'been submitted,to the court on oral argument of plaintiff, pro se, and counsel for defendant, together with the briefs of the parties.
Plaintiff, who appears prose, has made an able and appealing argument on his own behalf. However, in largest part, as already indicated in our order of April 3, 1970, this court has no jurisdiction over the type of claims he asserted in his amended petition.* The only remaining issue concerns his contention that he 'should not have been held disabled for military service as of 1962. On that question — the only one which we left open by our prior order and the one to which Commissioner Stone’s opinion is directed — Mr. Stewart argued that, if he had fcnown at the various times that he applied for or acquiesced in a finding of physical disability that his rank of staff sergeant would be restored by the Correction Board retroactively (as it was in ,1969), he would not have taken the same position that he did with respect to his physical fitness for military service. Iiis point is that, though he was disabled for the grade of corporal he was not disabled for the higher but less physically strenuous grade of staff sergeant. We cannot accept this argument since the record does not show, and we have no reason to believe, that the physical requirements for a marine corporal are stricter than for a. marine staff sergeant, or that plaintiff would have met *475 the standards for the latter although not for the former. Accordingly, we must agree with the trial 'commissioner that he has not shown the determination that he was disabled in 1962 to have been wrong, unlawful or arbitrary. 'It appears that plaintiff suffered an injustice at the hands of the Marine Corps, but to the extent that such injustice may not already have been remedied by the 'Correction Board’s actions we are in no position to grant further relief.
Since the court agrees with the commissioner’s opinion, findings and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same, together with the foregoing paragraph, as the basis for its judgment in this case. Therefore, plaintiff is not entitled to recover and the petition is dismissed.
OPINION OP COMMISSIONER
Stone, Oommissioner: This is a military pay case in which the question now before the court is whether plaintiff is entitled to recover the active duty pay and allowances of a Staff Sergeant (E-5) in the United States Marine Corps, less disability retirement payments received by him, from the time of his separation from the service to the date on which his last enlistment contract normally would have expired.
Plaintiff first enlisted in the Marine Corps on May 8,1943, and he continued to serve on active duty under successive reenlistments until October 12, 1962, when he was separated for reasons and under circumstances hereinafter set forth. He last reenlisted in the Corps on September 9, 1960, for a term of 6 years in the rank and pay grade of Sergeant (E-5).
It is important to plaintiff’s theory of recovery to note at the outset that early in January 1962, a finance company complained in writing to the Commanding Officer at Quan-tico, Virginia, that plaintiff was in arrears in making payment on an installment note indebtedness. During the course of an informal investigation concerning this matter, plaintiff admitted that the debt was just but explained that he was short of funds and delinquent in his payments because he was not receiving the right amount of military pay each payday, and claimed that he had made arrangements for *476 paying the indebtedness. On May 3, 1962, at which time plaintiff still held the rank and grade of Staff Sergeant (E-5), his Company Commander found him guilty of wrongfully and dishonorably failing to pay a just debt to a finance company, and imposed nonjudicial (company) punishment upon him, consisting of reduction to the rank and grade of Corporal (E-4), such reduction being suspended for a period of 6 months. During that period, on June 11, 1962, plaintiff was found guilty of being absent without leave, nonjudicial punishment in the f orm of an official reprimand was awarded him, the suspension mentioned above was vacated, and he was reduced to Corporal (E-4).
Keeping the above-stated facts in mind, it will contribute to a better understanding of the problem presented here to digress at this point and outline certain actions taken and the present posture of this case. In his original petition, plaintiff sought active duty pay of a Staff Sergeant in pay grade E-6 from June 11,1962 to October 12, 1962, the date of his separation. On August 6, 1968, proceedings in this court were suspended in order to enable the Board for Correction of Naval Records (“Correction Board”) to take action affecting plaintiff’s claim.
In a context that will be more fully explained later on, the Correction Board, in a report dated February 10, 1969, rejected plaintiff’s contention that prior to his disability retirement from the Marine Corps he would have been promoted to the rank and grade of Staff Sergeant (E-6) but for the alleged unjust nonjudicial punishment received by him as a result of his failure to pay a just debt, mentioned earlier. However, the Board found that plaintiff’s suspended reduction to pay grade E-4 constituted an injustice; and the decision of the Board was that plaintiff’s service records should be corrected to reflect continued service in pay grade E-5 as a Staff Sergeant until October 12, 1962, at which time he was transferred to the Temporary Disability Retired List (TDRL). The Board’s decision was approved by the Under Secretary of the Navy on behalf of the Secretary on February 18, 1969, and plaintiff’s service records were so corrected.
*477 Thereafter, on April 14, 1969, plaintiff filed an amended petition in this court seeking active duty pay and allowances of a Staff Sergeant (E-5), less disability monies received, for the period October 12, 1962 to September 8, 1966, the date on which his term of enlistment would normally have expired, and other relief. On April 3,1970, the court entered an order granting defendant’s motion for summary judgment in part, but denying that motion as to plaintiff’s alleged claim for active duty pay as aforestated, and the case was remanded to the trial commissioner for further appropriate proceedings.[1]
It is my opinion that plaintiff is not entitled to recover.
Turning now to the facts concerning plaintiff’s physical condition, the evidence shows that on August 20,1962, plaintiff was admitted to the U.S. Naval Hospital, Quantico, Virginia, and given a physical examination. Thereafter, on August 27, 1962, he personally appeared before a three-member Medical Board which submitted a report dated August 31, 1962, reading in part:
Diagnosis: 1. FLATFOOT, BILATERAL * * *; 2. VARICOSE VEINS, n.e.c. BILATERAL * * *; 3. HEMORRHOIDS,EXTERNAL * * *;4.HALLUX VALGUS * * *
This * * * [plaintiff] was admitted to this facility electively through the orthopedic-surgery out-patient clinic for evaluation of chronic pain in the feet. The patient describes the onset of present illness as being a gradually occurring pain in the longitudinal arches of both feet on prolonged standing and walking four years ago. Patient states that since that time pain has gotten progressively worse until now it is a constant dull ache which is increased to a sharp pain on any walking, running, or standing. Patient has had no relief from longitudinal arch pads, cushion innersoles or whirlpool therapy. Patient is now unable to perform duty even on limited status due to pain.
* ❖ ❖ ❖ Sji
*478 It is the recommendation of the Board that he appear before a PEB [Physical Evaluation Board].
On September 19, 1962, plaintiff appeared before a PEB, and on the same date the Board sent a report to him advising that it intended to recommend approval of “prima facie” findings which read in pertinent part:
It is recommended that * * * [plaintiff] be found:
(1) Unfit to perform the duties of his grade because of physical disability: Flatfoot, bilateral * * *; Hallux valgus * * *
(-2) That such disability was incurred while entitled to receive basic pay. (by reason of service aggravation)
(8) That such disability is not due to intentional misconduct or wilful neglect and was not incurred during a period of unauthorized absence.
(4.) * * * * *
c. that the Party has over eight years of active service.
(■5) That such disability is ratable at 20% in accordance with the Standard Schedule for Eating Disabilities in current use by the Veterans Administration:
* * * Flatfoot, 3rd degree, acquired, severe, with 15° foregoot [sic] valgus, 15° hallux valgus; pain on manipulation and use accentuated; characteristic callosities; not improved by orthopedic appliances; bilateral, EPTE, aggravated 30%
Less EPTE 10%
Final rating 20%
(6) That accepted medical principles indicate that such disability may be permanent.
Plaintiff was requested to advise the Board whether or not he accepted the above-quoted findings and he was informed that if he accepted the same, they would be forwarded to the Physical Eeview Council (PEC) but that if the findings were unacceptable to him, he would 'be afforded a full and fair hearing before the PEB. Subsequently, plaintiff advised the PEB in writing that its proposed findings were acceptable to him and stated that he did not demand a hearing.
The PEC reviewed the PEB proceedings and on Septem *479 ber 25,1962, concurred in the findings contained therein. Following review and approval of the proceedings and findings of the PEB as concurred in by the PBC, the Secretary of the Navy, on September 26, 1962, directed that plaintiff be separated as unfit to perform the duties of his grade by reason of physical disability (rated at less than 30 percent under the Standard Schedule for Bating Disabilities then in use by the Veterans Administration). Thereafter, on October 12, 1962, plaintiff was discharged from the Marine Corps in the grade of E-4 (Corporal) under honorable conditions for physical disability with severance pay in the amount of $4,560.
On May 25,1964, plaintiff applied to the Correction Board, requesting that his service records be corrected to show that he was retired by reason of physical disability (at least 30 percent under the Standard Schedule for Bating Disabilities then in use by the Veterans Administration, required) instead of being discharged with severance pay. The Board forwarded plaintiff’s records to the Naval Physical Disability Beview Board (NPDBB) for an advisory opinion as to whether plaintiff’s disabilities were properly diagnosed and evaluated when he was discharged. In a unanimous opinion dated March 17, 1965, the NPDBB advised the Correction Board that plaintiff’s physical condition was properly diagnosed and evaluated, “within the contemplation of Title 10, U.S. Code, Chapter 61.”
The Correction Board forwarded a copy of the NPDBB advisory opinion to plaintiff’s counsel in order to afford him an opportunity to introduce additional evidence or file a rebuttal. On March 30,1965, plaintiff’s counsel filed with the Correction Board a statement of rebuttal in which it was contended that the PEB erred when it made a 10 percent deduction from an assigned disability rating of 30 percent to arrive at its final rating of 20 percent, on the presumption that the condition of plaintiff’s feet at the time of his induction was moderately disabling. In view of the statement of rebuttal, the Board returned all of the records relating to plaintiff’s case to the NPDBB with a request for further advice.
Thereafter, on May 4, 1965, the Collection Board was *480 advised by tbe NPDRB that after reconsidering plaintiff’s base, it was of the unanimous opinion that error was committed when the 10 percent deduction was made from the 80 percent disability rating in that there was nothing in the records to indicate that plaintiff was 10 percent disabled because of flatf eet prior to enlistment.
After a review of all tbe evidence of record, the Correction Board, on May 17, 1965, communicated the following “DECISION” to the Secretary of the Navy:
It is the decision of this Board that the naval record of * * * [plaintiff] be corrected to show:
a. That he was not discharged with severance pay on 12 October 1962.
b. That the Secretary of the Navy on 11 October 1962, while Petitioner was entitled to receive basic pay, determined him unfit to perform the duties of his rank by reason of physical disability, incurred while entitled to receive 'basic pay by reason of Flatfoot, acquired, bilateral, and Hallux Valgus; that his disability is not due to intentional misconduct, or willful neglect and was not incurred during a period of unauthorized absence ; that he has completed over 8 years active service; that his disability is considered to be 80% in accordance with the standard schedule of rating disabilities in current use by the Veterans Administration Code Number 5276, Flatfoot, acquiring, severe; and that accepted medical principles indicate that his disability may be of a permanent nature, and therefore the Secretary of the Navy placed his name upon the temporary disability retired list on 12 October 1962.
The above-quoted decision was reviewed and approved on May 22,1965, by the Under Secretary of the Navy, on behalf of the Secretary, who then directed that plaintiff’s records be corrected accordingly. Plaintiff was advised of that action on May 25,1965. Thereafter plaintiff’s records were changed and a new Certificate of Discharge was issued to him showing that he was “Temporarily Retired” and “* * * Placed on Temporary Disability Retired List VA Code 5276 * * *” in grade E-4, effective October 11, 1962, with 12 years, 2 months, and 13 days active service.
On October 26, 1965, plaintiff reported to the U.S. Naval Hospital, Bethesda, Maryland, for a Periodic Physical Ex- *481 amina,t,ion in. accordance with, the CMC Orders. An attachment dated November 2, 1965, to a report made under date of November 15, 1965, to the Commanding Officer by a Medical Board convened at said Hospital, stated that since retirement plaintiff had noted chronic pain in both feet on prolonged walking and standing; that he complained of continuous dull aching pain over the plantar aspects of both feet with intermittent burning sensations, aggravated by any walking, standing, or running; that he had not experienced any relief with a variety of orthopedic devices and shoes; that upon reporting to the hospital he was using, a cane; and that he had been unable to work continuously because of chronic pain.
Subsequent to the physical examination made of plaintiff mentioned above, plaintiff, on April 7, 1966, filed another application with the Correction Board wherein he requested that his service records be corrected to reflect that he was not reduced in rank and grade from Staff Sergeant (E-5) to Corporal (E-4) on June 11, 1962, and that he continued to serve as a Staff Sergeant (E-5) until retirement. In essence, the injustice alleged by plaintiff was that his reduction in rank and grade was the result of misunderstanding, personal prejudice, bias, discrimination, and harassment on the part of his superiors, and not because of any wilful acts of misconduct by him.[2]
In a report to the PEB, dated March 19, 1967, another Medical Board at the Naval Hospital in Bethesda advised that plaintiff had complained of pain in both feet and legs, and stated that he was unable to work on his feet more than 3 to 4 hours a day; that he was quite tense and nervous because of pain in his feet and that walking and standing caused most of the symptoms; and that he did not and could not wear arch supports because of pain in his feet.
On April 28, 1967, plaintiff appeared in person and with counsel for a final hearing before a second PEB convened at Headquarters, TJ.S. Marine Corps, Washington, D.C. Certain documents, including letters from the Veterans Administra *482 tion and plaintiff’s brother, indicating problems encountered by plaintiff in obtaining employment and staying on jobs because of the disabling condition of Ms feet and legs, were introduced in evidence on Ms bebalf. Plaintiff testified in detail along the same lines, stating, among other things, that since going off active duty he had continuously experienced considerable pain in his feet and legs, suffered an achy-type of pain from varicose veins, and had been bothered by hemorrhoids; that as a result of his physical condition, particularly his feet and legs, he had found it difficult to obtain employment, and had been forced to quit a number of jobs; that his feet hurt especially when it rained and during cold weather; that he could not wear orthopedic shoes supplied to him by the Veterans Administration because they caused him even more pain; that the Veterans Administration and Bethesda Naval Hospital had issued him a cane; that he wore elastic stockings when he could get them; and that he never had any relief from the pain in his feet.
After reviewing the medical records and other evidence before it, the PEB announced recommended findings which read in part:
It is recommended that * * * [plaintiff] be found:
(1)Unfit to perform the duties of his grade because of physical disability
(1) Elatfoot, bilateral * * *
(2) Varicose Veins, n.e.c., bilateral (lower extremities) * * *
(3) Hemorrhoids, rectal * * *
(4) Hallux Valgus, congenital * * *
* $ $ * *
(5)That such disability is ratable at 40% in accordance with the standard Schedule for Bating Disabilities in current use by the Veterans Administration.
* * * Flatfoot, acquired, bilateral, severe 30%
* * * Varicose Veins, moderate 10%
* * * Hemorrhoids, mild or moderate 0%
Combined 37%
Final 40%
(6)That accepted medical principles indicate that such disability IS permanent.
*483 The Board communicated the above findings to plaintiff and advised him of his right to file a statement in rebuttal thereto. Plaintiff indicated that he did not desire to submit a rebuttal and did not do so. Thereafter*, the record of the PEB proceedings and its recommendations were referred to the PEC.
On May 22, 1967, the PEC forwarded to the Secretary of the Navy, the record of the April 28,1967 PEB proceedings, stating that the PEC concurred in the recommended findings of the PEB in plaintiff’s case and that upon approval thereof, plaintiff would be removed from the TDEL and placed on the Permanent Eetired List (PEL). Thereafter, on May 23, 1967, by direction of the Secretary of the Navy, the Office of the Judge Advocate of the Navy directed the Chief of Naval Personnel to issue orders transferring plaintiff from the TDEL to the PEL with a disability rating of 40 percent. Such action was taken; plaintiff was permanently retired in the rank and grade of Corporal (E-4), effective June 1, 1967; and he was so advised.
On October 14,1968, the Correction Board held a hearing on plaintiff’s April 7, 1966 application mentioned earlier, relating to his reduction in rank to Corporal in pay grade E-4. Plaintiff appeared with counsel at that time, and presented considerable testimony in support of the asserted injustice of his reduction; however, he did not claim that he was physically fit for active duty, nor seek active duty.
A report containing the Correction Board’s findings covering the above-described hearing, actions taken thereafter, decision, and recommendation was sent to the Secretary of the Navy by the Board under date of February 10, 1969.[3] As previously indicated, the report was reviewed and approved by the Under Secretary of the Navy on behalf of the Secretary. Pursuant to such action, the Board changed plaintiff’s service records consistent with the decision set forth in its report.
*484 By letter dated September 29, 1969, plaintiff requested that the Correction Board reconsider Ms application and, in effect, further correct his records to show that he was promoted to and retired in pay grade E-6. Upon reconsideration, the Board denied plaintiff’s request in a letter sent to him on October 8,1969.
Plaintiff now contends before the court that had he known he would be reinstated as a Staff Sergeant (E-5), or that he was wrongfully reduced in rank and grade, he would not have accepted the findings of the PEB, since he was assertedly fit to perform the duties of a Staff Sergeant (E-5). Defendant counters, arguing, in substance, that having been found physically unfit for active duty, plaintiff cannot recover active duty pay.
It is the well-settled rule in this court that clear and convincing evidence of arbitrary or capricious action is needed before the court will reverse a finding by the Secretary of a military service or by a Correction Board concerning fitness for military duty. Furlong v. United States, 153 Ct. Cl. 557 (1961) ; Ward v. United States, 178 Ct. Cl. 210 (1967) ; Unterberg v. United States, 188 Ct. Cl. 994, 412 F. 2d 1341 (1969). Plaintiff has made no such showing herein. On the contrary, the record, including not only physical examinations and medical reports, unrebutted by plaintiff, but also Ms own admissions, statements, and recorded actions, gives overwhelming support to the decision of the Correction Board that plaintiff was correctly determined to be unfit for active duty by reason of physical disability on October 11, 1962, his name being placed on the TDBL on October 12, 1962; and to the decision of the Secretary of the Navy that plaintiff be transferred from the TDBL to the PEL, effective June 1, 1967. Those findings and determinations are final and conclusive, and will not be reversed here.
Plaintiff has cited in Ms amended petition the case of Conn v. United States, 180 Ct. Cl. 120, 376 F. 2d 878 (1967), in support of his claim for active duty pay, less disability payments actually received. That case is not in point. There the court allowed recovery of active duty pay from the effective date of that plaintiff’s undesirable discharge from the *485 Marine Corps to the date on which his term of enlistment would normally have expired, for the reason that the discharge weis found to be legally invalid. In that case, defendant failed to adhere to established procedures provided in its own regulations. Plaintiff herein points to no such failure in the instant situation.
The authorities cited by plaintiff in his objections to defendant’s proposed findings of fact filed herein also do not offer any support to his asserted claim. Bell v. United States,[4] 366 U.S. 393 (1961), held only that the petitioners therein, enlisted men in the United States Army who were captured during the hostilities in Korea in 1950 and 1951, were entitled under 37 U.S.C. §242 (1958)[5] (headed “Pay during captivity”) and the Missing Persons Act,[6] to the pay and allowances that accrued during their detention as prisoners of war. Plaintiff’s statement that “officers and men become entitled to the pay thus fixed so long as they remain in the Navy, whether they actually perform service or not” is apparently derived from 15 Op. Att’y GeN. 175, 176 (1876), cited in Bell, supra, at 403-404. Similar language was used in response to the question propounded to the Attorney General of whether confinement or suspension from duty of officers or men under sentence of court-martial works, ipso facto, a forfeiture or loss of pay during such confinement or suspension. 15 Op. Att’y Gen. 175 (1876). White v. United States, 72 Ct. Cl. 459 (1931), relied on by plaintiff and cited in Bell, supra, at 404, involved a situation in which the Government denied the plaintiff therein his military pay for the period during which he was away from his station as the result of criminal proceedings brought against him by civilian authorities. Walsh v. United States, 43 Ct. Cl. 225 (1908), cited in Bell, supra, at 404, is relied on by plaintiff for the proposition that “[t]he mere fact that an officer or soldier is under charges does not deprive him of his pay and *486 allowances, such forfeiture can only be imposed by the sentence of a lawful court-martial.” The facts and circumstances covered in the cited authorities do not even approximate the instant situation where plaintiff was determined unfit for active duty by reason of physical disability and retired. Said authorities are clearly distinguishable from the case at hand and are not pertinent to the decision here.
In summary, the record discloses that after plaintiff was discharged from the Marine Corps on October 12, 1962, as being unfit for active duty by reason of physical disability, with severance pay, an action which he admittedly did not appeal or protest, he sought and was granted disability retirement pay from said date forward, being on the temporary disability retired list with a disability rating of 30 percent from that time until June 1,1967, when he was placed on the permanent retired list with a disability rating of 40 percent. As a result of all the administrative actions here-inbefore mentioned, plaintiff ultimately received disability pay computed on the basis of grade E-5 from October 12, 1962 to date. The record conclusively shows that plaintiff was physically unfit and unable to serve on active duty from the time he was relieved therefrom on October 12,1962. Until instituting the instant suit, plaintiff never claimed he was physically fit to perform active duty subsequent to that date; and he has not presented any evidence whatsoever indicating that he was fit for such duty thereafter.
Therefore, and in view of the fact that plaintiff was legally determined to be unfit for active duty by reason of physical disability on October 11,1962, his name being placed on the TDRL on October 12,1962; and that he was incapacitated for further performance of active duty from that date forward, it is concluded and held that he is not entitled to recover the active duty pay and allowances of a Staff Sergeant (E-5), less disability retirement payments received by him, from October 12, 1962 to the date on which his last enlistment contract normally would have expired. Brown v. United States, 143 Ct. Cl. 605 (1958). Accordingly, the petition should be dismissed.
*487 FindiNgs OK Fact
1. Plaintiff was born on September 15,1924. He is a citizen of the United States and presently resides in Upper Marlboro, Maryland.
2. Plaintiff first enlisted in the United States Maxine Corps on May 8,1943, and continued to serve on active duty under successive reenlistments until October 12, 1962, when he was separated for reasons and under circumstances set forth in subsequent findings. He last reenlisted in the Marine Corps on September 9, 1960, for a term of 6 years with the rank of Staff Sergeant in the pay grade of E-5.
3. It will be helpful to a better understanding of this case to briefly summarize some of the proceedings herein before continuing on with more substantive findings. In plaintiff’s original petition filed June 3, 1968, he sought active duty pay of a Staff Sergeant in the grade E-6 from June 11,1962 to October 12, 1962, the date of his separation. Proceedings in this court were suspended to afford him an opportunity to reapply to the Board for Correction of Naval Records (“Correction Board”) for the relief desired. Following a hearing held by the Correction Board, the Secretary of the Navy, on February 18,1969, approved a report of the Board in which it rejected plaintiff’s contention that he should have been retired as a Staff Sergeant (E-6), but decided that his records should be corrected to reflect that he continued to serve as a Staff Sergeant in pay grade E-5 until October 12, 1962, when he wTas transferred to the Temporary Disability Retired List (TDRL), and plaintiff’s records were so corrected. Thereafter, on April 14, 1969, plaintiff filed an amended petition seeking active duty pay for the period October 12,1962 to September 8,1966, the expiration of term of service under his last reenlistment in grade E-5, and for other relief.
On April 3, 1970, the court entered an order granting defendant’s motion for summary judgment, filed May 23, 1969, as to plaintiff’s alleged claims for damages for: (1) destruction of a military career and for erroneous entry of records; (2) loss of commissary, P-X, and medical privi *488 leges; and (3) pay and allowances for the grade of E-6, and dismissed these claims asserted in plaintiff’s amended petition ; but the court denied defendant’s said motion as to plaintiff’s alleged claim that he was entitled to active duty pay, less disability retirement payments, from the time of his separation to the expiration of his enlistment contract, stating that said claim was adequately pleaded in plaintiff’s amended petition and not barred by the statute of limitations, and remanded the case to the commissioner for further appropriate proceedings with regard to plaintiff’s last-mentioned claim.[1] Motions- for reconsideration of the court’s order of April 3, 1970, filed by defendant and plaintiff on April 16, 1970, and April 30, 1970, respectively, -were denied by the Court in an order entered July 15,1970.
4. (a) The documentary evidence in the record discloses that on January 26, 1962, the Union Finance Company of Jacksonville, North Carolina, forwarded a letter to the Commanding Officer, Marine Corps Schools, Quantico, Virginia, alleging -that plaintiff was in arrears in making payment on an-installment note indebtedness. An informal investigation concerning this complaint was conducted by Marine Corps authorities during the course of which plaintiff admitted in an interview that the debt in question was just, but indicated that he was delinquent in his. payments because his pay was “fouled up” and he was not receiving the right amount of pay each payday, and that he had written to the Union Finance Company and made arrangements for paying the indebtedness. The Commandant of the Marine Corps was advised of the results of the above-mentioned interview with plaintiff in a report made on March 7,1962, which also contained the following conclusion: “Due to poor financial management and poor judgment of Sergeant Stewart he now finds himself unable to meet his financial obligations on time.” Thereafter, *489 on May 3,1962, at which time plaintiff was holding the rank and grade of Staff Sergeant E-5 and serving in a Service Company, Service Battalion, Quantico, Virginia, the follow' ing entry was made in plaintiff’s service record:
“Violation of Art. 184, UCMJ (Did wrongfully and dishonorably fail to pay a just debt to the Union Finance Company, Jacksonville, N.C. from 26 J an 62 to 30 Apr 62. Awarded reduction to next inferior grade, suspended for a period of six months. Not appealed.”
The above entry recorded nonjudicial (company) punishment imposed upon plaintiff by the Commanding Officer of the Service Battalion to which plaintiff was assigned, and resulted in his being reduced in rank and grade to Corporal (E-4) (Article 15 UCMJ), with reduction being suspended for 6 months.
(b) The following administrative entries, among others, also were made in plaintiff’s service record:
“lljun62: ServCo, ServBn, MCS, Quantico, Va. Viol of Art 86, UCMJ, (UA(AOL) fr 0731 6Jun62 to 0800, 8 Jun62. Awarded official reprimand by Bn CO at OH this date. Suspension for (sic) reduction to NIB dtd 3MAY62 vacated and carried out on this date. Appealed.”
“27 Jun62: ServCo, ServBn, MCS, Quantico, Va. Appeal for (sic) nonjudicial punishment denied in accordance with CMCS ltr 17/sjd of 21 Jun62.”
The above entries disclose that as a result of being found absent without leave, plaintiff was given an official reprimand and the suspension of his reduction in rank to Corporal (E-4) was vacated effective as of June 11, 1962. Although the June 27,1962 entry quoted states that plaintiff’s appeal was denied, the evidence shows that no record of the content of this appeal, nor the rationale pertinent to the denial thereof, is available.[2]
5. On August 20, 1962, plaintiff was admitted to the U.S. Naval Hospital, Quantico, Virginia, and given a physical *490 examination. Thereafter, on August 27, 1962, plaintiff personally appeared before a .three-member Medical Board which submitted a report dated August 31, 1962, reading in part:
Diagnosis: 1. FLATFOQT, BILATEBAL * * * 2. VARICOSE VEINS, n.e.c. BILATERAL * * *; 8. HEMORRHOIDS, EXTERNAL * * *; 4. HALLUX VALGUS * * *
This * * * [plaintiff] was admitted to this facility electively through the orthopedic-surgery out-patient clinic for evaluation of chronic pain in the feet. The patient describes the onset of present illness as being a gradually occurring pain in the longitudinal arches of both feet on prolonged standing and walking four years ago. Patient states that since that time pain has gotten progressively worse until now it is a constant dull ache which is increased to a sharp pain on any walking, running, or standing. Patient has had no relief from longitudinal arch pads, cushion innersoles or whirlpool therapy. Patient is now unable to perform duty even on limited status due to pain.
m ❖ * * *
It is the recommendation of the Board that he appear before a PEB [Physical Evaluation Board].
6. On September 19, 1962, plaintiff appeared before a PEB, "Washington, D.C. In a report sent to plaintiff on the same date, the Board advised that it intended to recommend approval of the following prima facie findings:
It is recommended that * * * [plaintiff] be found:
(1) Unfit to perform the duties of his grade because of physical disability: Flatfoot, bilateral * * *; Hallux valgus * * *
(2) That such disability was incurred while entitled to receive basic pay. (by reason of service aggravation)
(3) That such disability is not due to intentional misconduct or wilful neglect and was not incurred during a period of unauthorized absence.
(4.) *****
c. that the Party has over eight years of active service.
*491 (5) That such, disability is ratable at 20 % in accordance with the Standard Schedule for Rating Disabilities in current use by the Veterans Administration:
* * * Flatfoot, 3rd degree, acquired, severe, with 15° foregoot [sic] valgus, 15° hallux valgus; pain on manipulation and use accentuated; characteristic callosities; not improved by orthopedic appliances; bilateral, EPTE aggravated 30%
Less EPTE 10%
Final rating 20%
(6) That accepted medical principles indicate that such disability may be permanent.
Plaintiff was requested to advise the Board whether or not he accepted these findings, and he was informed in pertinent part as follows:
# 2. * * * If you accept these findings and do not exercise your right to a full and fair hearing, the findings will be forwarded to the Physical Review Council without further proceedings before the Board. If you do not accept the prima facie findings, you will be afforded a full and fair hearing before the Physical Evaluation Board.
3. You are advised that the prima facie findings noted above are recommended findings only, and are subject to review as provided in Chapter 5 of the Disability Separation Manual. Final disposition will be in accordance with the direction of the Secretary of the Navy.
On September 20, 1962, plaintiff advised the Board in writing to the effect that the prima facie findings of the PEB were acceptable to him and stated that he did not demand a hearing before that Board.
7. On September 26, 1962, following review and approval of the proceedings and findings of the PEB, the Secretary of the Navy directed that plaintiff be separated as unfit to perform the duties of his grade by reason of physical disability (rated at less than 30 percent under the Standard Schedule for Rating Disabilities then in use by the Veterans Administration).
8. Thereafter, on October 12,1962, plaintiff was discharged *492 from the Marine Corps under honorable conditions for physical disability with severance pay amounting to $4,560, in the grade of E-4 (Corporal).
9. Plaintiff, on May 25, 1964, signed an approved form “Application For Correction of Military or Naval Becord,” wherein he requested, in effect, that his records be corrected to show that he was retired by reason of physical disability (at least 30 percent under the Standard Schedule for Bating Disabilities then in use by the Veterans Administration, required) instead of being discharged with severance pay, stating: “I feel my condition was such at time of discharge to have warranted a disability retirement. I feel the PEB errored [sic] in not granting me this.” In support of his application, plaintiff stated “The VA [Veterans Administration] granted me a combined 40% rating effective my date of discharge.”
10. In view of the entries in plaintiff’s medical record, his records were referred to the Naval Physical Disability Be-view Board (NPDBB), Washington, D.C., on September 15, 1964, for an advisory opinion as to whether plaintiff’s disabilities were properly diagnosed and evaluated when he was discharged, and the NPDBB was requested to consult the VA records in his case. The NPDBB met on January 12, 1965, and, after a thorough review of all available records, submitted to the Correction Board a unanimous advisory opinion dated March IT, 1965, to the effect that plaintiff’s physical condition was properly diagnosed and evaluated at the time of his discharge on October 12, 1962, “within the contemplation of Title 10, U.S. Code, Chapter 61.” The NPDBB decided that a formal hearing would be unnecessary and none was held.
11. (a) The Correction Board forwarded a copy of the March IT, 1965 NPDBB advisory opinion to plaintiff’s counsel in order to afford him an opportunity to introduce additional evidence or file a statement of rebuttal. On March 30, 1965, plaintiff’s counsel filed a statement of rebuttal, which reads in part:
We believe that the Physical Evaluation Board erred in evaluating this applicant’s severe feet condition as *493 only 20% disabling, and, we, of course, disagree with the decision of the NPDKB in having concurred with this evaluation. The records show that the examination upon which the PEB based their evaluation adequately and clearly shows the veteran ito ¡be suffering from á very severe pes planus condition, so much so that it more than meets all of the requirements of the Bating Schedule for a 30% rating. In this respect, the PEB fairly and justifiably assigned a 30% rating and then turns around and without any basis whatsoever, takes 10% from'this 30%, purely on speculation by presuming that the veteran’s feet condition at the time of induction was moderately disabling.
* * * The induction examination, when this man first went into the service in 1943, was completely normal and the induction examination on his second period of service on March 28, 1955, shows second degree pes planus, bilateral, NCD. There is not one single additional bit of information concerning the condition of this man’s feet at the time of induction. These findings, at induction, are well below the requirements for an evaluation of a mild degree of pes planus which is 0%, for there is no doubt that at the time the veteran was not using a builtup shoe, or an arch support, to relieve his symptoms, and, even if he did, under that situation the rating would still be 0%. We believe that the entire 30% degree of disability was acquired during active duty. In other word's, it was aggravated from a mild degree to a severe degree bilaterally. This situation certainly does not call for a 10% deduction, as was done in this case.
'Since the Navy has admitted that the veteran is unfit, for naval duty due to his feet condition 'and since we believe for reasons already stated, that the veteran is justifiably entitled to a 30% final rating for his severe symptomatic pes planus condition, we believe that the Navy erred in not retiring this man due to disability.
It is noted that the Veterans Administration, after a very careful and complete examination, which is essentially the same as the final examination made in the Navy, granted, without question, a 30% rating for pes planus and, more yet, allowed a 10% rating for varicose veins, bilateral.
(b) In view of the statement of rebuttal partially quoted in (a) above, the Correction Board returned all of the records reflating to plaintiff’s case to the NPDBB on April 1, *494 1965, with, a request for further advice. Thereafter, in a written communication sent to the Chairman of the Correction Board under date of May 4,1965, the NFDRB advised that it had met on April 13, 1965, to reconsider plaintiff’s case and stated:
2. After reconsideration of the available records in this case, and careful review of the information contained in reference (fo), it is the unanimous opinion of the Naval Physical Disability Review Board, that the petitioner was properly evaluated by the Physical Evaluation Board as being unfit to perform the duties of his grade by reason of Flatfoot, acquired, bilateral, severe, ratable at 30% under VA Code 5276 at the time of his discharge on 12 October 1962. However, when 10% was subtracted from the 30% by reason of EPTE, an error was committed in that there is nothing in the records to indicate that the petitioner was 10% disabled because of flatfeet prior to enlistment. Accordingly, an EPTE factor of 0% is deemed appropriate and a final rating of 30% should be established in this case.
12. (a) Under date of May 17,1965, the Correction Board sent a communication to the Secretary of the Navy, which summarized plaintiff’s case and reads in part:
f. That following a review of all the evidence of record, this Board finds error and injustice in Petitioner’s naval record which warrants corrective action. _ The Board finds that at the time of his discharge Petitioner was suffering from flatfoot and varicose veins; that this condition rendered him unfit for duty within the contemplation of Title 10, U.S. Code, Chapter 61. The Board finds there is no evidence of record that Petitioner’s flatfeet were disabling prior to his enlistment; that this condition was noted in 1953 as not disqualifying for reenlistment; that he was examined for enlistment in 1943 and no defects were noted; that his flatfoot condition did not become disqualifying until 1962. The Board finds that Petitioner’s disability, Flatfoot, was incurred while entitled to receive basic pay within the contemplation of Title 10, U.S. Code, Chapter 61; that had his condition been evaluated in accordance with accepted medical principles he would have been assigned a 30% disability rating for this condition under VA Code Number 5276 and his name placed on the TDRL effective 12 October 1962. Accordingly, the proposed corrective action is warranted.
*495 DECISION:
It is the decision of this Board that the naval record of Dunbar H. Stewart, ex-CPL, USMC, 800371, be corrected to show:
a. That he was not discharged with severance pay on 12 October 1962.
b. That the Secretary of the Navy on 11 October 1962, while Petitioner was entitled to receive basic pay, determined him unfit to perform the duties of his rank by reason of physical disability, incurred while entitled to receive basic pay by reason of Flatfoot, acquired, bilateral, and Hallux Valgus; that his disability is not due to intentional misconduct or wilful neglect and was not incurred during a period of unauthorized absence; that he has completed over 8 years active service; that his disability is considered 'to be 30% in accordance with the standard schedule of rating disabilities in current use by the Veterans Administration Code Number 5276, Flatfoot, acquired, severe; and that accepted medical principles indicate that his disability may be of a permanent nature, and therefore the Secretary of the Navy placed his name upon the temporary disability retired list on 12 October 1962.
RECOMMENDATION:
The Board recommends that the Department of the Navy pay to Dunbar Harrison Stewart, ex-CPL (E-4), USMC, 800371, or other proper party or parties, as a result of the foregoing correction of naval record, all monies lawfully found to be due, less any monies paid by the Department of the Navy or the Veterans Administration in connection with his service connected disability and that the Commandant of the Marine Corps request Petitioner to surrender the certificate of discharge issued him on 12 October 1962 and upon surrender thereof, all references thereto be deleted from his naval record.
* * * * *
5. The foregoing action of the Board is submitted for your review and action.
(b) On May 22,1965, the above-mentioned findings, decision, and recommendation were reviewed and approved by the Under Secretary of the Navy, on behalf of the Secretary, who then directed that plaintiff’s records be corrected to show that his name was placed on the TDRL, with a disability *496 rating of 30 percent, effective October 11, 1962. Plaintiff was advised of the aforestated action on May 25,1965.
13. Following the Secretary of the Navy’s approval on May 22,1965, of the May 17,1965 decision and recommendation of the Correction Board, .plaintiff’s records were changed and a new Certificate of Discharge was issued to him showing that he was “Temporarily Retired” and “* * * Placed on Temporary Disability List VA Code 5276 * * *” in grade of E-4, effective October 11, 1962, with 12 years, 2 months, and 13 days active service.
14. An attachment dated November 2, 1965, to fa report made under date of November 15,1965, to the Commanding Officer by a Medical Board, U.S. Naval Hospital, BethesdaJ Maryland, reads in part:
This 41 year old negro male reported to this hospital on 26 Oct 1965 for a Periodic Physical Examination in accordance with CMC Orders. He had been placed on the TDRL on 19 Sep 1962 * * *.
Since retirement the patient has had a wide variety of jobs ranging from a florist’s deliverer to a press messenger. He has noted chronic pain in both feet on prolonged walking and standing which has made performance of his duties difficult. The patient has been refused work on the basis of his chronic foot problems.
The patient’s complaints upon reporting bo the hospital were continuous dull aching pain over the plantar aspects of both feet with intermittent burning sensations, aggravated by any walking, standing, or running. The patient has not experienced any relief with a variety of orthopedic devices and shoes.
Physical examination upon reporting to the hospital was within normal limits except for the patient using a cane. Neurological examination was within normal limits. Bilateral 3rd degree pronated pes planus with 20° forefoot valgus on both sides. Bilateral lateral deviation of the heel cord insertions with 20° pronation of the os oalcis. Bilateral .plantar fascia tenderness.
Left Right
Range of motion of ankle 15° Dorsiflexion 10°
joint: 40° Plantar Flexion 40°
* * * X-Rays of the feet showed minimal arthritic changes in both subtalar joints.
*497 * * * A prescription for corrective orthopedic shoes was given.
Since his previous Board the patient has experienced continuous difficulty with his feet, and has been unable to work continuously because of chronic pain. Recent X-Rays of the feet reveal the presence of early bilateral osteoarthritis of both subtalar joints, active inversion is limited to 30° bilaterally, while active eversion is limited to 20° on both sides.
15. In a report to the Physical Evaluation Board dated March 10, 1967, a Medical Board, TJ.S. Naval Hospital, Bethesda, Maryland, stated in pertinent part:
1. This 43 year old CPL/USMC on the retired inactive list was placed on the TDRL on 19 September 1962 with a diagnosis of flat foot and hallux valgus. His last periodic physical examination was in November 1965. Attention is invited to periodic physical examination dated 26 October 1965.
2. At the time of discharge the patient was experiencing continuous difficulty with his feet and was unable to work because of chronic pain. X-rays revealed the presence of early bilateral osteoarthritis of both subtalar joints. Active inversion was limited to 30 degrees bilaterally while active eversion was limited to 20 degrees on both sides.
3. Since that time the patient had had about 12 jobs, most of which involved making small deliveries in automobiles, trucks or on foot. The patient states that he has done terribly with “no good days” because of his feet. He complains of pain in both feet and legs and states that he is unable to work on his feet more than three to four hours a day. The patient states that this has been his main reason for inability to keep a job longer than 6-8 months at a time. The patient further states that he is quite tense and nervous because of pain in his feet and that walking and standing cause most of the symptoms. The patient does not and states that he cannot wear arch supports because of pain in his feet.
* * * * *
5. Physical examination upon admission reveals a blood pressure 130/92, pulse of 80, temperature 97.6. Physical examination was normal in all respects with the exception of both legs and feet. There were varicosities of the left long saphenous system and a calcaneovalgus deformity bilaterally, with marked pes planus. There was *498 slight forefoot valgus and hallux valgus present on both feet. Motion at the foot includes dorsiflexion on the right of 15 degrees, on the left of 20 degrees; plantar flexion 50 degrees on the right, 50 degrees on the left; inversion of 30 degrees on the right and 25 degrees on the left; eversion of 15 degrees on the right and 5 degrees on the left.
6. * * * There was a persistence of the traumatic osteoarthritis of both subtalar joints seen on x-ray of both feet. The patient received no treatment while in the hospital and was discharged from the hospital after his final periodic physical examination on 3 February 1967. It is felt at this time that the patient has not improved since his last periodic examination and has symptomatically more complaints than at his’ last evaluation.
7. It is the opinion of the Board that he is physically and mentally able to appear in person before a Physical Evaluation Board * * *. The patient was discharged to home on 3 February 1967.
16. (a) Thereafter, on April 28, 1967, plaintill; appeared in person and with counsel for a final hearing before a second Physical Evaluation Board convened at Headquarters, U.S. Marine Corps, Washington, D.C. Certain documents, including letters from the Veterans Administration and plaintiff’s brother, indicating problems encountered by plaintiff in obtaining employment and staying on jobs because of the disabling condition of his feet and legs, were introduced in evidence on his behalf. Plaintiff testified in detail along the same lines, stating, among other things, that since going off active duty he had continuously experienced considerable pain in his feet and legs, suffered an aching-type of pain from varicose veins, and been bothered by hemoi'rhoids; that as a result of his physical condition, particularly his feet and legs, he had found it difficult to obtain employment, and had been forced to quit a number of jobs; that his feet hurt especially when it rained and during cold weather; that he could not wear orthopedic shoes supplied to him by the VA because they caused him even more pain; that the VA and U.S. Naval Hospital at Bethesda had issued him a cane; that he wore elastic stockings when he could get them; and that he never had any relief from the pain in his feet.
(b) After reviewing the medical records and other evi *499 dence before it, the Board announced recommended findings which, read in part:
It is recommended that * * * [plaintiff] be found:
(1) Unfit to perform the duties of his grade because of physical disability.
(1) Flatfoot, bilateral * * *
(2) Varicose Veins, n.e.c., bilateral (lower extremities) * * *
(3) Hemorrhoids, rectal * * *
(4) Hallux Valgus, congenital * * *
(2) That such disability was incurred while entitled to receive basic pay,
sfc # ❖ H« ❖
(5)That such disability is ratable at 40% in accordance with the standard Schedule for Eating Disabilities in current use by the Veterans Administration.
* * * Flatfoot, acquired, bilateral severe 30%
* * * Varicose Veins, moderate 10%
* * * Hemorrhoids, mild or moderate 0%
Combined 37 %
Final 40%
(6)That accepted medical principles indicate that such disability IS permanent.
The Board advised the plaintiff that the recommended findings of the Board did not indicate what the final determination of the Secretary of the Navy would be and that they were communicated to him only for the purpose of filing a rebuttal if he so desired. Plaintiff signed a form to the effect that he did not desire to submit a statement in rebuttal to the recommended findings of the Board and he did not do so.
17. On May 22,1967, the Physical Eeview Council (PEC) forwarded to the Secretary of the Navy the record of the Physical Evaluation Board proceedings on April 28, 1967, stating that the PEC concurred in the recommended findings of the PEB in plaintiff’s case, and that upon approval thereof, plaintiff would be removed from the TDEL and placed on the Permanent Eetired List (PEL). Thereafter, on May 23, 1967, by direction of the Secretary of the Navy, the Office of the Judge Advocate of the Navy directed the *500 Chief of Naval Personnel to issue orders transferring plaintiff from the TDRL to the PPL with a disability rating of 40 percent. Such action was taken; plaintiff was permanently retired in the rank and grade of Corporal E-4, effective June 1,1987; and he was so advised.
18. Subsequent to the physical examination of plaintiff in October-November 1965, mentioned in finding 14, but prior to the events and actions stated in findings 15, 16, and 17, plaintiff filed an application with the Correction Board dated April 7,1966, requesting that “[t]he reduction in rank from S/Sgt., E-5 to Corporal, E-4 on June 11, 1962 be vacated. Change records to show I was retired as S/Sgt.” In essence, the injustice alleged by plaintiff was that his reduction in rank was the result of misunderstanding, personal prejudice, bias, discrimination, and harassment on the part of his superiors, and not because of any willful acts of misconduct by 'him. In support of this application, plaintiff sent a letter to the Correction Board dated April 14, 1966, in which he (1) offered an explanation for his admittedly being 3 months in arrears on his payments due under the installment loan contract signed by him with the Union Finance Company (mentioned in finding 4(a)); and (2) asserted that the charge of being absent without leave, which resulted in his being reduced in rank to Corporal E-4 on June 11,1962 (finding 4(b)), was untrue and unfounded, because his Commanding Officer allegedly authorized him to take emergency leave during the period of time involved {ibid). Plaintiff requested that he be given an opportunity to personally appear before the Board.
19. In accordance with plaintiff’s application dated April 7, 1966, and request made by him in his letter of April 14, 1966 (mentioned in finding 18), the Correction Board held a hearing on October 14, 1968, at which time plaintiff appeared with counsel and presented considerable testimony relative to the asserted injustice of his reduction in rank to E-4; but he did not claim that he was physically fit for active duty nor indicate a desire to return to active duty nor seek active duty. A report containing the Board’s findings *501 covering the above-mentioned hearing, actions taken thereafter, decision, and recommendation was sent to the Secretary of the Navy by the Board under date of February 10, 1969. The report reads in part:
3. The Board, having reviewed all the facts of record pertaining to Petitioner’s allegations of error and injustice, finds as follows:
* % $ * Jfc
c. During the course of the hearing Petitioner contended that, but for an unjust non-judicial punishment awarded to him for alleged dishonorable failure to pay a just debt, he would have been promoted to Staff Sergeant, E-6, prior to his disability retirement from the Marine Corps. * * *
* * Jfc # $
4. After review and consideration of all evidence of record, oral and documentary, the Board finds that the suspended reduction to pay grade E-4 accorded to Petitioner for dishonorable failure to pay a just debt constitutes an injustice based upon evidence that he was delinquent in his payments to the Union Finance Company by reason of family financial difficulty and the lack of evidence that Petitioner intended to deceive or defraud his creditor. However, the. Board is unable to find justification for changing Petitioner’s record as requested to show that he was retired as a Staff Sergeant in view of his four previous failures to pass the relevant GMST [General Military Subjects Test] and his military performance record in pay grade E-5, as reflected by Petitioner’s non-commissioned Officer Fitness Be-ports. Accordingly, the following action is warranted.
DECISION:
That Petitioner’s record be corrected to reflect that he was not reduced from Staff Sergeant (E-5) to Corporal (E-4) on 11 June 1962, but that he continued to serve in pay grade E-5 -until 12 October 1962, at which time he was transferred to the temporary disability retired list.
BECOMMENDATION:
That the Department of the Navy pay to Petitioner, or other proper party or parties, all monies lawfully *502 found ito be due as a result of the foregoing correction of naval records.
‡ Ht $ $ $
6. The foregoing action of the Board is submitted for your review and action.
On February 18,1969, the above-mentioned report, including the findings, decision, and recommendation contained therein, was reviewed and approved by the Under Secretary of the Navy on behalf of the Secretary. Pursuant to such action, the Correction Board changed plaintiff’s records consistent with the decision set forth in said report and carried out the recommendation contained therein.
20. In a letter sent to plaintiff under date of October 8, 1969, the Correction Board stated in part:
This is in reply to your letter of 29 September 1969 requesting that your application to this Board be reconsidered and, in effect, that your record be further corrected to show that you were promoted to and retired in pay grade E-6.
The Board has carefully considered the reasons you have advanced in your letter as to why you should have been promoted to pay grade E-6, together with those furnished by the Commandant of the Marine Corps on 6 October 1969 as why your claim is not supported by your military record. For your convenience, a copy of the Commandant’s comment is enclosed.
The Board has noted that substantially the same contentions as were made in your letter of 29 September had been considered in connection with its previous action on your case, which was approved by the Secretary of the Navy on 18 February 1969, and has determined that no further change in your record is warranted. Accordingly it adheres to its previous action which reinstated you to pay grade E-5 but did not advance you to a higher grade.
CoNClusioN op Law
Upon the foregoing findings of fact and opinion, which are adopted by the court and made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is not entitled to recover and the petition is dismissed.

Our order concluded: “(1) that plaintiff’s alleged claims for damages for destruction of a military career, and for erroneous entry of records sound in tort and are thus not within the jurisdiction of this court: (2) that as to plaintiff’s alleged claims for loss of commissary, 3P — X, and medical privileges, plaintiff is not entitled to recover since such privileges were never removed from plaintiff because he was, upon discharge from active duty, still entitled to them as a member of the disabled retired list: (3) that as -to plaintiff’s alleged claims for any pay and allowances for the grade of E — 6, which plaintiff asserts he should have held, plaintiff is not entitled to recover, on the ground that this request has been decided adversely to plaintiff by the Correction Board, whose action he does not allege to have been arbitrary or capricious: and (4) that plaintiff’s alleged claim with respect to the question of whether or mot he is entitled to active duty pay, less disability retirement payments, from the time of his separation to the expiration of his enlistment contract, is adequately pleaded in the amended petition and is not barred by the statute of limitations.”

 Motions for reconsideration of the court’s order filed by defendant and plaintiff were denied by the court in an order dated July 15, 1970. In accordance with the expressed desires of both parties, no trial was held. The record consists solely of the pleadings, and certain documentary material received in evidence during the course of pretrial proceedings.

 The facts concerning plaintiff's reduction, which gave rise to the filing of said application, are set forth earlier in this opinion (third paragraph) and will not be repeated here.

 This report is referred to hereinbefore (fifth paragraph) and need not be discussed again in detail at this point. It is sufficient to repeat for emphasis that as a result of the Board’s decision and the Secretary’s approval thereof, plaintiff’s records were corrected to show that he was continued in the rank and grade of Staff Sergeant (E-5) until October 12, 1962, at which time he was placed on the TDRL.

 Cited by plaintiff as Beall v. United States.

 Section 1288 of tbe Revised Statutes and 10 U.S.C. § 846 (1952), also cited by plaintiff In bis objections to defendant’s proposed findings of fact, were forerunners to 37 U.S.C. § 242 (1958).

 50 U.S.C. App. § 1001, et seq.

 In accordance with the expressed desires-of both parties, no trial was held, and proof was closed after certain documents offered by them were received In evidence at a pretrial conference on November 19, 1970. See Pretrial Conference Memorandum filed November 20, 19.70. That memorandum and another one previously filed September 3,1970, covering a conference on August 28,1970, disclose the efforts made by the trial commissioner to ensure plaintiff a fair and .full opportunity to prove his claim during this proceeding, since he chose not to be represented by counsel.

 Additional facts showing successful efforts made by plaintiff to have hia records corrected to reflect he was not reduced from Staff Sergeant (E-5) to Corporal (E-4), and that he continued to serve in pay grade E-5 until October 12, 1962, are set forth in findings 18 and 19, infra.