UNITED STATES

v.

Staff Sergeant Raymond E. SMITH, FR 252–80–3946 6549th Consolidated Aircraft Maintenance Squadron, Air Force Eastern Test Range (AFSC).

ACM 21893.

U. S. Air Force Court of Military Review.

Sentence Adjudged 5 June 1975.

Decided 17 Oct. 1975.

---

Appearances: Appellate counsel for the Accused: Colonel Jerry E. Conner and Major Bruce R. Houston. Appellate counsel for the United States: Colonel C. F. Bennett.

## DECISION

EARLY, Judge:

Tried by general court-martial, military judge alone, the accused was convicted, pursuant to his pleas, of stealing $1,940.40, two specifications alleging the making of a false official statement, making a fraudulent claim, dishonorable failure to pay a debt, and making a false statement on a loan application, in violation of Articles 121, 107, 132 and 134, respectively, Uniform Code of Military Justice, 10 U.S.C. §§ 921, 907, 932 and 934. The approved sentence extends to a bad conduct discharge, confinement at hard labor for one year, forfeiture of $200.00 per month for one year and reduction to airman first class.

Although no errors have been asserted, examination of the record of trial discloses one matter meriting our consideration.

During the inquiry prior to acceptance of the accused's guilty pleas, the following colloquy took place:

MJ: Under Charge Four, a violation of the Uniform Code of Military Justice, Article 134, is alleged, two specifications. The first specification alleges that you were indebted to the MacDill Air Force Base Credit Union in the sum of $7,886.00.

DC: Your Honor, that's $788.67. I think trial counsel will concur in that—

.    .    .    .    .

MJ: That this debt became due and payable on 1 January 1975, that you were indebted to the MacDill Air Force Base Credit Union for this amount, and you did, at MacDill Air Force Base, from 1 May 1974 to 1 January 1975, dishonorably fail to pay that debt? [sic] Is that correct?

ACC: That is correct.

MJ: How did you happen to incur this debt, Sergeant Smith?

ACC: That debt was incurred during the time in which I was married and it was a loan for furniture, household appliances.

MJ: You were married from when to when?

ACC: I was married from 1968 until January of 1972.

.    .    .    .    .

MJ: Did I understand you to say you incurred this debt while you were married?

ACC: That is correct, sir.

.    .    .    .    .

MJ: Then how could the debt be from 1 May 1974?

ACC: Because that is the portion which was not paid from the time of my last payment.

MJ: I see. When was the debt initially incurred, then?

ACC: The debt was initially incurred in the latter part of 1971.

MJ: I see. Then you were paying how much a month on it supposedly?

ACC: Approximately $90 a month, sir.

MJ: And in May, 1974, is that when you stopped paying on the indebtedness?

ACC: That is correct, sir.

MJ: Did you have any discussion with the people at the MacDill Credit Union about this?

ACC: I had only one communication from myself to the Credit Union, sir, and that was in which I wrote them requesting that my balance be re-prorated.

MJ: Did they ever answer this?

ACC: No, sir, I did not receive any communication from the MacDill Credit Union in that regard.

MJ: Did you receive any letters requesting you to pay?

ACC: Yes, sir, I did.

MJ: Were you ever counseled by your commander or first sergeant about payment of debts?

ACC: No, sir, I was not.

MJ: Do you know if they ever wrote to your commander or first sergeant?

ACC: No, sir, I do not.

MJ: Where were you stationed during this period, Sergeant Smith?

ACC: Up until November, 1974, I was stationed at Clark in the Philippines.

MJ: Did you know it was wrong to not make any effort to keep up with indebtedness?

ACC: Yes, sir.

MJ: Did you understand that the failure to pay a—dishonorable failure to pay a debt was a punishable offense by court-martial?

ACC: At that time, no, sir.

MJ: Why did you not pay it?

ACC: Sufficient funds were not available.

MJ: How much money were you drawing?

ACC: At that particular time, sir, my monthly pay check was roughly $167.

MJ: Where was the rest of your money going?

ACC: It was going for other allotments.

.   .   .   .   .

MJ: Did you have an allotment to the MacDill Credit Union?

ACC: Up until May 1974, I did.

MJ: What did you do? Did you stop the allotment?

ACC: Yes, sir.

MJ: Why?

ACC: It was my intention at that time, when I requested the Credit Union to refinance my loan by which I could make less payments, therefore I would have more funds to survive on.

MJ: Did I understand you to say you got letters from the Credit Union about payment?

ACC: I did receive a communication from the Credit Union, yes, sir.

MJ: What did they tell you?

ACC: They informed me that the account was delinquent and that I should resume full payments immediately.

MJ: Did they threaten anything?

ACC: To my knowledge, no, sir.

MJ: Could you have paid it?

ACC: In the amount that was due, no, sir.

MJ: Why not?

ACC: Again, sir, my monthly pay check was not in the amount by which I could afford to pay.

MJ: Why was it so low?

ACC: I had other indebtedness.

MJ: Such as?

ACC: Such as the McCoy Federal Credit Union, and I had other forms [sic] by which I was paying some other private debts.

MJ: Was it due to indebtedness that you couldn't pay the amount due the MacDill Credit Union?

ACC: That's correct, sir.

MJ: Did you during this period make any payments at all to them?

ACC: No, sir, I did not.

Based upon this dialogue, the military judge found the accused's guilty plea to this

specification provident. However, in our opinion, the plea should not have been accepted without further inquiry into the accused's understanding of the word "dishonorable."

 To be dishonorable, one's failure to pay a just debt "must be characterized by deceit, evasion, false promises or other distinctly culpable circumstances indicating a deliberate nonpayment or grossly indifferent attitude toward one's just obligations." Manual for Courts-Martial, 1969 (Rev.), paragraph 213*f*(7); *United States v. Kirksey*, 6 U.S.C.M.A. 556, 20 C.M.R. 272 (1955). Furthermore, mere negligent nonpayment, even over a long period of time, does not itself establish the element of dishonorableness, and one's inability to discharge a debt, contracted without wrongful intention, is a defense to the charge. *United States v. Cummins*, 9 U.S.C.M.A. 669, 26 C.M.R. 449 (1958); *United States v. Stevenson*, 30 C.M.R. 769 (A.F.B.R. 1960).

Here, the accused's responses reveal no more than an inability to pay the debt in the amount agreed following a lengthy period of satisfactory compliance with the terms of the loan. According to the accused, he notified his creditor of this fact and asked that the loan be refinanced or his payments lowered, but he did not receive a responsive reply. Rather than demonstrating dishonorableness, we believe the accused's explanation is more consistent with an honest attempt on his part to discharge the debt in a manner both acceptable to his creditor and within his own capabilities. Clearly, the entire tenor of the accused's responses is inconsistent with any contention that his conduct was characterized by deceit, evasiveness, false promises or gross indifference. Manual, supra, paragraph 213 *f*(7); *United States v. Kirksey*, supra.

 It is elementary that an accused's responses during a guilty plea inquiry cannot be disregarded as "implausible, unreliable, or incredible." *United States v. Stinson*, 35 C.M.R. 711 (A.F.B.R. 1964), pet. denied, 35 C.M.R. 478 (1964). Whether believable or not—and there is no evidence to the contrary—the accused's language was inconsistent with a criminal conduct on his part. Accordingly, it was the duty of the military judge to either make further inquiries into the providency of his pleas, or, if his statements were not withdrawn, to enter a plea of not guilty. *United States v. Schneiderman*, 12 U.S.C.M.A. 494, 31 C.M.R. 80 (1961). Failure to do so rendered the plea improvident. Accordingly, in lieu of a rehearing, we will set aside the finding of guilty as to Specification 1 of Charge IV and order this charge dismissed.

The remaining findings of guilty are correct in law and fact. Reassessing the sentence on the basis of the approved findings, we find that only so much of the sentence as provides for a bad conduct discharge, confinement at hard labor for 10 months, forfeiture of $200.00 per month for 10 months and reduction to airman first class is appropriate.

The findings of guilty and the sentence, both as modified herein, are Affirmed.

LeTARTE, Chief Judge, and ORSER, Judge, concur.