## UNITED STATES

### v.

**Thomas L. BILBO, Jr., 449 33 6954, Private (E–1), U. S. Marine Corps.**

### NCM 79 2001.

U. S. Navy Court of Military Review.

Sentence Adjudged 27 June 1979.

Decided 30 June 1980.

LCDR Lawrence W. Muschamp, JAGC, USN, Appellate Defense Counsel.

CAPT John P. Hertel, USMC, Appellate Government Counsel.

Before BAUM, Senior Judge and PRICE and MICHEL, JJ.

MICHEL, Judge:

Contrary to his pleas, appellant was found guilty of larceny and dishonorable failure to pay just debts in violation of Articles 121 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 921 and 934. The military judge who presided over appellant's special court-martial sentenced him to confinement at hard labor for 4 months, forfeiture of $250.00 pay per month for 4 months and a bad-conduct discharge.

From the record it appears that on 1 and 2 March of 1979, appellant individually approached three fellow troopers at Camp Schwab, Okinawa, Japan, with varying pleas to borrow specific sums of money. At the time of these requests, appellant represented to the respective expectant lenders that he was a Corporal Johnson, that he was a member of a unit assigned in the immediate area, that he had a pressing need for funds, and that, in exchange for an extremely short-term loan, appellant would be willing to pay what amounted in each case to a clearly usurious rate of interest. Appellant's failure to repay the loans thus effected resulted in his conviction of the offenses at issue here.

Appellant has assigned five errors for this Court's consideration but limited oral argument to only one of them. Of the errors assigned, four are essentially interrelated and the fifth lacks merit. We consequently turn to appellant's major complaint, that the evidence, the facts established by that evidence, and the law applicable to those facts cannot support appellant's conviction for either species of offense as set forth in the three specifications of the two charges referred to trial by appellant's commanding officer.

Both parties agree that the two charges and their respective three specifications were pled to provide for the contingencies of proof. See United States v. Littlepage, 10 U.S.C.M.A. 245, 27 C.M.R. 319 (1959), and cases cited therein. The primary dispute arises, however, because of the military judge's special findings that neither appellant's misrepresentations concerning his name, rank, and military unit nor his offer to repay the several putative loans at an undisputed usurious rate was the effective causal impetus for each of his fellow service members to part company with his money. Appellant argues that, since all three fellow Marines testified that they would have loaned appellant the sums he requested merely because he was a Marine in need and "lending money back and forth between marines [was] a pretty common practice," the three offenses grounded in larceny by trick, see paragraph 200a (4), Manual for Courts-Martial 1969 (Rev.) (MCM), have not been committed and, as none of the respective creditors made a demand upon appellant for repayment of the respective loans, the three offenses of dishonorable failure to pay just debts are likewise legally infirm. We believe that appellant is partly correct and, as will be seen, we are thus required to take corrective action in his case.

For this Court to affirm appellant's three convictions for larceny, we must find that the evidence establishes, inter alia, that appellant, at the times and places alleged, specifically intended to deprive the respective creditors of the use and benefit of their funds permanently, see Articles 66(c) and 121(a)(1), UCMJ, 10 U.S.C. §§ 866(c) and 921(a)(1); paragraph 200a (6), MCM, or that appellant specifically intended to permanently appropriate these funds to his own use or the use of someone other than the true owner. Id. As paragraph 200a (6) of the Manual makes clear, the offense can be committed by one who forms this specific intent either concomitantly with the wrongful acquisition of the subject personalty or subsequent to any lawful acquisition. This same paragraph also leaves no room for doubt that in the normal course of events this specific intent, if it exists at all, must be inferred from circumstantial evidence. In the case at bar the evidence discloses that appellant never repaid the respective creditors within the time limits verbalized and understood by the respective parties at the time each of the individual loans were made. Further, the record indicates that all three creditors made no de-

mand for repayment and undertook no other effort to collect either the principal amount of the indebtedness or the "interest." Two months after the loans' maturation date, each creditor was instructed by a military superior not to pursue demand or collection efforts. Thereafter, two of appellant's military creditors followed these instructions; the third did not and his meager collection efforts were met with dilatory tactics on appellant's part. While we recognize full well that a demand for repayment of a loan is a consideration not directly material to an analysis of the offense of larceny, such creditor-originated activity does, in fact, impinge on the other trilogy of offenses of which appellant stands convicted.

■ We do not agree with the government, in the absence of supportive citation, that one who commits the offense of larceny becomes the debtor of the victim by operation of law. Perhaps in the moral sense an obligation for restitution springs from the detriment to the victim created by the unlawful acts of the perpetrator; however, we leave such esoteric subjects to their proper theological proponents, for courts in general and intermediate appellate courts in particular are bound by the constraints of secular law and precedent. The labors of research have yielded not even a scintilla of legal authority which would impel us to hold that larcenous conduct alone gives rise to the creation of the relationship of debtor and creditor between or among the parties involved with the criminal act. This Court would be among the first to agree that the law favors restitution and will take account of the act of reparation, but only to the extent that the malefactor's punishment is involved; the mere fact that restitution has been made or promised is not an adequate legal substitute for the threshold requirements which are at the core of the legal association of criminal-victim. Leaving aside, momentarily, the issue of whether or not appellant is thrice guilty of larceny, we will assume, *arguendo*, that he is not.

■ Unquestionably, the evidence supports a finding of fact that the relationship of debtor-creditor was established severally between appellant and his casual acquaintances in a manner not much out of the ordinary—a loan, in each instance, was solicited and repayment, specific as to amount and timeliness, was negotiated and mutually agreed to by the respective parties. Each individual transaction created in appellant an obligation to repay the loan according to the terms agreed upon. That appellant never made or tendered partial or full payment to each or all of his creditors until the day prior to trial might well be of interest in civil litigation; but scrutiny of the military criminal justice system is definitionally limited to an inquiry concerning whether or not appellant's failure to pay these apparently just debts *on time* was *dishonorable*. *See* paragraph 213*f*(7), MCM; *United States v. White*, 25 C.M.R. 733 (N.B.R.1958). Of course, the length of time that elapses subsequent to the date set for repayment will inferentially bear on the element of dishonorableness, as will any denial by a debtor of the existence of the indebtedness. Paragraph 213*f*(7), MCM; *United States v. White, supra* at 736. However, where, as here, the debtor has not denied that the debt remains owing and the offense is charged 39 days after consummation of the transactions creating the individual obligations, we decline to view the past-due debts as so stale as to warrant an inference that the debtor's failure to act was completely compatible with that degree of dishonesty necessary to complete the alleged offense. *See United States v. White, supra* at 736. It is not for the appellant to shoulder the burden of explaining why a financial obligation of any age is delinquent, *see id.*, and we are not convinced from all the evidence of record that the prosecution proved that appellant's conduct in the premises was, in fact, dishonorable. *See* paragraph 213*f*(7), *supra*. *See also United States v. Smith*, 1 M.J. 703, 706 (A.F.C.M.R.1975), and cases cited therein. Accordingly, the findings of guilty respecting Charge II and its three supporting specifications must be set aside.

Similarly, we are bound to take action adverse to the government concerning the alleged larceny offenses. As noted, *supra*, an accused's specific intent to permanently deprive or appropriate the property of another is the critical element in offenses grounded upon Article 121(a)(1), UCMJ. While the record is replete with evidence establishing appellant's use of an alias while negotiating the loans in question and his agreements to repay the principal of each loan as well as an additional amount, which equated to a substantial percentage of the principal to each lender, these factors alone, in our view, are not dispositive. Neither is the state of mind of a putative victim solely relevant, for while it may be, in a given case, that the fallacious representations of the would-be debtor are not the effective cause which prompts the expectant creditor to loan his money to another, the critical inquiry should rightly focus on the *debtor's* intent. If that intent, which is wholly subjective in nature, meets the requisites of the statute, the offense is complete notwithstanding the subjective understanding or impression of the creditor concerning the particular inducement which formed the *quid pro quo* for the particular financial transaction. Were the law *contra*, any otherwise lawful monetary dealing between individuals would foreclose a criminal prosecution where the debtor, subsequent to or concomitant with the transaction, forms the specific intent to renege on the agreement in any unlawful degree, while from all outward appearances the creditor is thoroughly satisfied with the arrangement in all particulars and holds full expectation that all of the terms of the consummated agreement will be fulfilled to mutual satisfaction. This is not to say that in the case before us appellant is completely blameless in any legal sense. From the record we are convinced beyond a reasonable doubt that appellant, subsequent to entering into the financial arrangements described *supra*, formed the specific intent to, and did in fact, temporarily deprive the respective creditors of the use and benefit of their funds. *See* paragraph 200*b*, MCM. While the initial obtaining of these funds by ap-

pellant was perhaps lawful, the subsequent withholding of them from the general owners was wrongful and unlawful. *See* paragraph 200*a* (4), MCM. For these reasons we are permitted to and do hold that appellant is guilty of the lesser included offenses of wrongful appropriation of the funds of his three military "victims". *See* paragraph 200*b*, MCM. The sentence will be reassessed.

Accordingly, only so much of the findings as finds appellant guilty of wrongful appropriation under Specifications 8, 10, and 11 of Charge I in violation of Article 121, UCMJ, is affirmed. The findings of guilty respecting the remaining Charge and its underlying Specifications are set aside and these allegations are ordered dismissed. Upon reassessment, only so much of the sentence as provides for confinement at hard labor for 4 months and forfeiture of $250.00 pay per month for two months is affirmed.

Judge PRICE concurs.

BAUM, Senior Judge (dissenting):

I am convinced beyond a reasonable doubt by the evidence of record that appellant committed the three larcenies as charged. I believe that at the various times asserted appellant obtained the sums alleged from the three victims as a result of false representations that he would repay the money at the times promised, when in reality appellant had no intention whatsoever of fulfilling that obligation. I believe appellant intended at those times to permanently deprive the victims of their money. In addition, I find that lawful debts were created, despite appellant's contrary intent, when the victims, in reliance on appellant's assertions, provided him with money in the belief that it would be repaid at the stated times. Furthermore, since I believe appellant had no intention of paying these debts from the outset, his failure to pay when promised was willful and dishonorable. Accordingly, I find the three debt offenses to be established beyond a reasonable doubt. The debt and larceny offenses have been properly treated as multiplicious for sentencing purposes, however.

In light of the foregoing, I would affirm the findings and sentence as approved below.