UNITED STATES

v.

**Airman First Class Gary D. GONZALES, FR 438–88–4409, United States Air Force.**

**ACM S24971.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 14 March 1980.

Decided 10 July 1980.

Decision Upon Reconsideration
Sept. 8, 1980.

Before EARLY, ARROWOOD and MILES, Appellate Military Judges.

## DECISION

MILES, Judge:

Consistent with his plea, accused was convicted of absence without leave in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886. However, the military judge erred in accepting the accused's plea of guilty because the accused testified he was not aware of his obligation to report for active military service.

The accused served on active duty from 5 April 1972 until 16 June 1978. He was then honorably discharged and enlisted in the Air Force Reserve. Thereafter, he failed to attend reserve meetings and was sent orders, by certified mail, directing his return to active military duty on 20 August 1979. On 9 March 1980, he was returned to military control. He was charged with absence without leave from 20 August 1979 to 9 March 1980.

During the providency inquiry into his plea of guilty and throughout the trial, the accused, though acknowledging receipt of his orders to active duty, steadfastly maintained that he had not read the orders, did not know their effective date, and did not know that he was required to report to active duty. He claimed he simply threw them away as he had other material from the reserves. The accused lived about three

fourths of a mile from the Air Force Base where he was ordered to report, kept a listed phone number and when arrested by civilian police simply told them it was a mistake–he was not in the Air Force and had been discharged.

■ Article 45 of the Code, 10 U.S.C. § 845, *supra*, requires a plea of guilty to be provident and in accordance with the actual facts. *United States v. Moglia*, 3 M.J. 216 (C.M.A.1977); *United States v. Johnson*, 1 M.J. 36 (C.M.A.1975); *United States v. Logan*, 22 U.S.C.M.A. 349, 47 C.M.R. 1 (1973); *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969). When an accused's response during a providence inquiry is inconsistent with his plea, the trial judge must further inquire to determine the full extent of the inconsistency and, unless the accused disavows the inconsistent statement, the plea must be rejected. Article 45, Code, *supra; United States v. Jemmings*, 1 M.J. 414 (C.M.A.1976); *United States v. Reeder*, 22 U.S.C.M.A. 11, 46 C.M.R. 11 (1972); *United States v. Kaetzel*, 48 C.M.R. 58 (A.F. C.M.R.1973).

■ An accused's response during a guilty plea inquiry can not be disregarded as implausible, unreliable or incredible. *United States v. Smith*, 1 M.J. 703 (A.F.C. M.R.1975); *United States v. Stinson*, 35 C.M.R. 711 (A.F.B.R.1964), pet. denied, 15 U.S.C.M.A. 672, 35 C.M.R. 478 (1964). Such a statement must be accepted at face value in determining the sufficiency of the plea. *United States v. Jemmings, supra.*

■ In this case, the accused's continued assertions that he did not know that he had to report to active duty, whether believable or not, were inconsistent with his plea of guilty, and the findings of guilty and the sentence must therefore be set aside. *United ed States v. Shackleford*, 2 M.J. 17 (C.M.A. 1976); *United States v. Roby*, 23 U.S.C. M.A. 295, 49 C.M.R. 544 (1975); *United States v. Timmins*, 21 U.S.C.M.A. 475, 45 C.M.R. 249 (1972); *United States v. Kaet-*

zel, *supra; United States v. Norris*, 47 C.M.R. 224 (A.F.C.M.R.1973).

A rehearing may be ordered.

EARLY, Chief Judge, and ARROWOOD, Judge, concur.

## DECISION UPON RECONSIDERATION

### PER CURIAM:

Upon original review of the record of trial in this case, this Court, by its decision dated 10 July 1980 set aside the findings of guilty and the sentence. On 31 July, we decided to reconsider this decision on our own motion. Having so reconsidered, we adhere to our original decision.

EARLY, Chief Judge, concurring:

We reconsidered our decision in this case on our own motion to reexamine certain parts of the accused's responses during the providency inquiry. Having done so, we adhere to our original decision.

In order to remove any chance of doubt as to the rationale of our decision, I feel constrained to set forth certain parts of the trial. During the providency inquiry, the following occurred:

ACC: Oh. I was–I got out of the reserves–from what I understood it wasn't very good information, as I can see now, you spend six years in the Air Force on active and you get out of the reserves and stuff, and if you don't like it, you just quit going and what will happen you just get a discharge from the reserves. And I spent over six years in the Air Force active and so when I went to sign in at the reserves and I didn't particularly care what went on at the time and stuff, according to what I thought it would be. And, I figured well, if I neglect it, you know, that they would just leave me alone and give me a discharge out of the reserves. . . . And I thought I was completely through with the Air Force. I never–I never thought it possible that I'd be brought back in like this or anything like that. I thought it

was just between me and the reserves. And the paperwork that I got through the mail and stuff, I read it. You know, the first page that you got and stuff, and then after a while you know, it just became routine like, and I'd take a real quick look at it. You know, I wouldn't really read over it or nothing. I'd do away with it.

MJ: What did the paperwork tell you?

ACC: It just asked me why I was absent and stuff like that? (sic).

MJ: Okay.

ACC: That was before then. Then I got a set of orders.

MJ: What did the orders say?

ACC: That they were putting me back on active duty.

MJ: Okay, and what was the date on which you were supposed to be back on active duty?

ACC: I didn't know. I didn't really read them.

\* \* \* \* \* \*

MJ: And you didn't read them. I find that hard to understand.

\* \* \* \* \* \*

ACC: Like I say, once I looked at them, I saw, you know, the outside came from a reserve unit and I thought it was just a reserve paper and I didn't really look over it because I got out.

MJ: When did you realize that they were orders recalling you to active duty?

ACC: Whenever I guess my father told me the first sergeant had called him. I thought well, they must be putting me back on or something like that. That's all. And that's when I came out here and couldn't find nobody.

MJ: Well, when did you discuss this matter with your father?

ACC: I don't know the date, sir.

MJ: Well, was it before or after the 20th of August 1979.

ACC: Well, it was after.

\* \* \* \* \* \*

DC: Your honor, just try to clarify this procedural point, I think it should be noted for the record that the defendant does now admit he realizes or has realized that he was ordered back on active duty effective 20 August 79.

MJ: Well, that's what I'm trying to find out.

\* \* \* \* \* \*

MJ: When did this realization occur?

ACC: Whenever I got to the SPs office last Sunday.

\* \* \* \* \* \*

DC: Your honor, I would just note I haven't discovered any specific case law yet concerning constructive knowledge or duty to read. It is very definitely the defense's position that Airman Gonzales received orders returning him to active duty and giving him notice of an effective day of the 20th of August 1979 and we by no means seek to dispute the fact that he even signed a certified receipt for one letter ordering him back on effective 20 August 1979. Airman Gonzales admits that he saw one of these orders and merely omitted to note the line indicating the effective date. We therefore submit he certainly had a duty to read. After six years in the Air Force, was well aware of his duty to read orders completely and any neglect on his part while unfortunate would certainly not relieve him of his duty to report on the 20th of August 1979 after having received his extended active orders.

It has been consistently held by this Court and its predecessor Board of Review that "when an accused testified inconsistently with his plea of guilty . . ., it is the duty of the [presiding officer or military judge] to inquire into the providence of the plea, and, if the accused does not 'disavow' his testimony, to set it aside. . ." *United States v. Stinson*, 35 C.M.R. 711 (A.F.B.R.1964), *pet. denied*, 35 C.M.R. 478 (1964). As we said in *United States v. Smith*, 1 M.J. 703, 706 (A.F.C.M.R.1975):

It is elementary that an accused's responses during a guilty plea inquiry can not be disregarded as "implausible, unre-

liable, or incredible." . . .. Whether believable or not . . . the accused's language was inconsistent with a criminal conduct on his part. Accordingly, it was the duty of the military judge to either make further inquiries into the providency of his pleas, or, if his statements were not withdrawn, to enter a plea of not guilty.

See also *United States v. Kaetzel,* 48 C.M.R. 58 (A.F.C.M.R.1973).

Here the accused's responses indicate that he did not read the recall orders fully, at least as to the date that he was to report. It is of no matter that his counsel conceded that the accused had a duty to read the orders fully for he is not charged with a dereliction of duty.[1] The test we have consistently applied is whether the accused's responses are in any way inconsistent with a complete avowal of guilt (not whether his stated beliefs were reasonable, honest or believable).[2] Here we find his responses to be inconsistent with his pleas of guilty, and, hence should have been disavowed, or the plea rejected by the military judge.[3]

It is for these reasons that we set aside the accused's pleas and for the same reasons that, upon reconsideration, we affirm our earlier holding.

---

1. See *United States v. Moore,* 44 C.M.R. 496 (A.C.M.R.1971) wherein it was held that failure of evidence that the accused had knowledge of an order to report for duty required a dismissal of the charged absence without leave.

2. The reviewer made the same error when he advised the supervisory authority: "For the general criminal intent crime of absence without leave, the ignorance must be reasonable as well as honest."

This may well be the law if the case goes to trial on a not guilty plea, but the issue of guilt or innocence presented to the judge or members is not the same as the matter before the military judge during the providency inquiry.

3. Accused's responses also imply a mistake of law as to the consequences of his failure to report for recall. This would not necessarily render a plea improvident so long as the accused admits the doing of the act(s) which the law proscribes except in those cases where a specific intent is involved. Here we view the accused's responses as merely explaining why he did not fully read the orders.