Michael M. KRZEMINSKI, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 348–86C.

United States Claims Court.

Oct. 2, 1987.

Eugene R. Fidell, Washington, D.C., for plaintiff.

Jonathan S. Baker, with whom were Asst. Atty. Gen. Richard K. Willard, David M. Cohen, and Thomas W. Petersen, Washington, D.C., for defendant. Lieutenant David O. Vollenweider, III, Office of the Judge Advocate General, U.S. Naval Reserve, of counsel.

## OPINION

BRUGGINK, Judge.

This military pay case is presently before the court on defendant's motion to dismiss or, in the alternative, for summary judgment and on plaintiff's cross-motion for partial summary judgment. Upon consideration of the written and oral submissions of the parties and for reasons set out below, defendant's motion is denied and plaintiff's motion is granted.

## BACKGROUND

The court notes at the outset that this is not the typical military pay case in which the Claims Court is reviewing a decision of a military records correction board. The plaintiff, Michael Krzeminski, was discharged from the Navy on September 20, 1985 by order of the Commander, Naval Military Personnel Command (CNMPC), and did not seek any administrative review of his discharge. Krzeminski challenges his discharge for the first time in this court. Consequently, an issue arises in this case, which is examined in more detail in the Discussion section, as to the scope of the administrative record that must be reviewed by the court in deciding whether the CNMPC decision was proper. The CNMPC based his decision to discharge Krzeminski on a thirty-nine page record.[1] Defendant, however, also asks the court to consider a record composed of six volumes, including Krzeminski's complete military service record.[2] Based upon either a review of the limited administrative record before the CNMPC or a review of all of defendant's submissions, the court concludes that the CNMPC decision to discharge Krzeminski on the ground of dishonorable failure to pay just debts was not supported by substantial evidence.

As will be discussed in more detail subsequently, defendant's primary argument throughout these proceedings is that plain-

---

1. *See infra* note 13.

2. *See infra* note 12 and accompanying text.

tiff waived all rights to challenge his discharge, both administratively and in this court. As a corollary, defendant therefore challenges plaintiff's right to submit new evidence and argument to the court. In developing the background facts, the court has relied exclusively on uncontested facts drawn primarily from defendant's own supplemental materials. The only background facts drawn from plaintiff's present submissions relate to the waiver issue. The court initially makes two observations about the use of these materials. First, as discussed herein, the court's acceptance of plaintiff's factual submissions surrounding the waiver is not necessary to the result of this opinion.[3] As also discussed herein, however, it is the court's view that under these unusual procedural circumstances, it may consider new materials for the purpose of challenging an asserted waiver.[4]

Plaintiff, Michael M. Krzeminski, began his military career in 1973 by enlisting in the United States Coast Guard, where he remained until he was honorably discharged in May 1977. In July 1977, Krzeminski enlisted in the U.S. Navy, beginning active duty shortly thereafter. On August 25, 1985, the CNMPC ordered plaintiff separated from the naval service with a discharge under other than honorable conditions based on "a pattern of misconduct as exemplified by . . . [a]n established pattern of dishonorable failure to pay just debts."[5] On September 20, 1985, after approximate-ly twelve years of military service, Krzeminski was administratively discharged from the Navy. The events leading up to his discharge are detailed below.

On May 2, 1984, Krzeminski reported for duty to the U.S. Naval Communications Area Master Station (NAVCAMS), Western Pacific, Guam, Marianas Islands. The Navy had trained Krzeminski to serve as a radioman, sending him to various courses of instruction to learn that specialty. By June 1984, plaintiff had advanced to the rank of Radioman First Class. At NAVCAMS, Krzeminski was initially assigned the duty of supervisor of the watch and was responsible for the proper and efficient operation of the Naval Telecommunications Center, Nimitz Hill, and the Message Distribution Center, Apra Harbor; he supervised nine other enlisted personnel in this capacity. Krzeminski was also responsible for both routine and emergency destruction of classified materials. His first enlisted performance evaluation report at NAVCAMS, for the period May 19, 1984 to November 22, 1984, was good.[6]

In November 1984, plaintiff's financial condition began to deteriorate. Krzeminski's November 1984 financial statement submitted to his command revealed that he was indebted to twelve creditors, including the U.S. Government. At that time, excluding the government, the Navy ex-

3. *See infra* note 14 and preceding text.

4. *See infra* paragraph following note 13.

5. Naval Military Personnel Manual, art. 3630600, ¶ (1)(a)(2)(b)(1) (1984). Krzeminski's discharge certificate erroneously stated that he was administratively discharged from the Navy under other than honorable conditions by reason of "frequent involvement of a discreditable nature with civil or military authorities." *See* Defendant's App. I at 51. On December 2, 1986, defendant corrected the discharge certificate to state the present ground for separation. Defendant asserts that it merely corrected a typographical error by the clerk who prepared Krzeminski's discharge certificate; the clerk apparently misread the separation code.

6. The report concluded that Krzeminski was "a proficient and reliable supervisor. [He] consistently strives to better himself by taking college courses. . . . [He] has in a short time, quickly grasped the intricacy of NTCC Nimitz Hill operations. [He is] a well liked supervisor who maintains excellent rapport with section personnel." The report also indicated that Krzeminski was recommended for retention and was progressing toward a recommendation for advancement.

Krzeminski's performance record prior to his transfer to NAVCAMS was also good. For example, a performance evaluation report for the period June 20, 1983 to October 1, 1983 described him as a "superb professional communicator and highly motivated second class petty officer" with "proven ability as a supervisor who gets the job done efficiently." During his twelve years of military service, Krzeminski was awarded a Navy Achievement Medal, three Good Conduct Medals, a National Defense Service Medal, a Battle Efficiency Ribbon, a Sea Service Deployment Ribbon, and letters of commendation for superior performance.

change, and a credit union, he owed over $17,000.00. Plaintiff's budget for monthly expenditures, including his home layaway bill, exceeded his family's income by over $900.00.[7]

Krzeminski's recorded military performance also began to decline significantly beginning in November 1984. His enlisted performance evaluation report for the period November 23, 1984 to February 26, 1985 declares:

> [Krzeminski is an] [a]pathetic and unmotivated petty officer. Disillusionment with [Radioman] rating has resulted in seriously degraded performance, rather than positive effort toward change in rating. Zero adaptability; refuses to accept that he is expected to make honest effort to perform at present rate and rating until able to accomplish change of rating.... Not recommended for retention or advancement.

Based on Krzeminski's poor performance during this period, his security clearance was withdrawn and he was reassigned to non-radioman duties.[8]

In late 1984, because of an inability to improve his financial situation, Krzeminski consulted a bankruptcy attorney in Guam. On January 16, 1985, the attorney advised plaintiff not to make any further payments to creditors and to seek protection under the Bankruptcy Code. Krzeminski eventually filed for bankruptcy on April 26, 1985 in the United States Bankruptcy Court for the District of Guam.

In late 1984 and early 1985, defendant became aware of Krzeminski's severe financial situation through his November 1984 financial statement and letters from various creditors to the NAVCAMS commanding officer complaining that he was in arrears on his debt payments. On both January 25, 1985 and February 25, 1985, Krzeminski received written counselling notices encouraging him to correct his deficiencies in military performance and behavior, including indebtedness. He was informed that assistance was available through the Navy Family Services Center, the Navy Relief Society, his chain of command, his division officer, the chaplain, and other agencies. On both occasions, Krzeminski was warned that he could be processed for an administrative separation under other than honorable conditions if improvements in his performance were not forthcoming.

One of the creditors who had contacted the commanding officer at NAVCAMS was Beneficial Finance Corp. ("Beneficial"). Beneficial had launched an aggressive campaign and succeeded in enlisting the assistance of the Navy in collecting the sums owed. Krzeminski recounts that his division officer repeatedly summoned him to his office for increasingly hostile and threatening sessions. On January 10, 1985, the division officer told Krzeminski to pay these debts, stating, "You *will* report to me on the 15th and 30th of each month with money orders and I will follow you up to the Post Office to make sure you mail them" to the creditors. *See* Declaration of Michael M. Krzeminski ¶ 12 (emphasis in original). At this time, Krzeminski told his division officer that the money the officer was telling him to use to pay off these private debts was needed to meet household expenses. The division officer insisted that Krzeminski was to bring the money orders in as instructed. A few weeks later, the division officer, after receiving another

---

**7.** Krzeminski states that until November 1984 his financial condition was good. However, the record contains references to financial difficulties existing as far back as 1978. Moreover, according to documents filed in federal bankruptcy court in April 1985, Krzeminski had debts dating back to 1977 that he never paid. According to plaintiff, expected family support did not materialize in 1984, and his anticipated tax refund was not as large as expected because of errors inadvertently made in preparing his tax return. Despite these unanticipated developments, Krzeminski thought that he could maintain a budget by asking his creditors to accept reduced payments on an interim basis. He sent out letters in late 1984 and early 1985 requesting lower monthly payments. Of those creditors who responded, most refused to accept lower payments.

**8.** To perform the duties of radioman, one must have access to classified information. *See* Manual of Navy Enlisted Manpower and Personnel Classifications and Occupational Standards 21–A–2 (Jan. 1986).

letter from Beneficial complaining about nonpayment, ordered Krzeminski to send a telegram to Beneficial saying that he would pay. Krzeminski sent the telegram promising payment but, because he was advised the next day by his bankruptcy attorney to make no further payments on his debts, did not follow through with this promise. After Beneficial complained again, the division officer, on February 25, 1985, summoned Krzeminski to his office. The officer, W.J. Ryan, became irate that Krzeminski had, in his view, disobeyed his orders. Ryan called Krzeminski a liar and placed a set of administrative remarks in Krzeminski's service record recommending that he take several corrective actions.

After February 25, 1985, Krzeminski was assigned to several different work centers, performing duties in areas outside of his specialty (e.g., daily trash runs, structure painting, providing assistance to various self-help and base beautification projects). Krzeminski's enlisted performance evaluation report for the period February 27, 1985 to July 1, 1985 indicated that his performance did not improve. He received low ratings in all professional factors, in all personal traits, and in each leadership category. According to the evaluation, his performance during this period was "virtually non-existent"; he completely lacked motivation and initiative. Krzeminski's final evaluation report, for the period June 2, 1985 to September 15, 1985, also reflected poor performance.[9]

On June 26, 1985, Krzeminski was ordered to the office of the command master chief petty officer. He was "grilled" by three senior enlisted personnel about his attitude, performance, and finances. This session caused Krzeminski great stress. After the incident he was admitted to the Naval Regional Medical Center for psychi-

atric evaluation. He was released from the hospital on June 27, 1985.

Immediately after Krzeminski left the hospital, he was directed to the Legal Officer at NAVCAMS and presented with a written Notice of an Administrative Board Procedure Proposed Action. This notice informed Krzeminski that he was being considered for an administrative discharge from the naval service due to his dishonorable failure to pay just debts as evidenced by letters from various creditors and his November 1984 financial statement, and that his discharge could be characterized as other than honorable. The notice also informed him of his right to consult counsel prior to electing or waiving any provided rights. Krzeminski endorsed the statement at the end of the notice: "I have received the above letter and I understand its contents."

On June 27th, Krzeminski was also given a Statement of Awareness and Request For, or Waiver of, Privileges. On this written statement, he checked three separate boxes indicating that (1) he had consulted with counsel; (2) he had elected the right to obtain copies of documents that would be forwarded to the Commander, Naval Military Personnel Command supporting the basis of the recommended separation; and (3) he had waived the minimum two working days to respond to the Notice of the Administrative Board Procedure Proposed Action. Krzeminski did not elect the right to request an Administrative Board, the right to submit oral or written statements in his own behalf before an Administrative Board, or the right to representation of counsel at an Administrative Board. Krzeminski signed this statement of awareness.[10]

On August 12, 1985, Krzeminski again signed a Statement of Awareness and Request For, or Waiver of, Privileges. He

**9.** As discussed *infra,* Krzeminski was eventually discharged from the Navy on the ground of "misconduct as exemplified by ... [a]n established pattern of dishonorable failure to pay just debts," Naval Military Personnel Manual art. 3630600(1)(a)(2)(b)(1), not for his poor performance. Accordingly, the court does not rule on whether discharge could have been based on any ground besides "dishonorable failure to pay just debts."

**10.** According to plaintiff, the legal officer pressured him into signing the statement of awareness even though he had told the officer that he did not want to sign the letter (because he was unable to concentrate). This statement is not controverted by defendant.

executed the form in the same way as he had in the June 27, 1985 statement of awareness. Krzeminski states, without contradiction, that he decided to sign the August 12th statement without electing his right to an Administrative Board because he had been advised by a Navy Judge Advocate General (JAG) attorney that administrative discharge boards convened by the command were composed of members subservient to the wishes of the commanding officer who would not render a fair judgment of the facts of the case. In addition, Krzeminski states that he signed the statement of awareness because the pattern of harassment and hostility by his commanding officers had broken his will over the preceding months.

On August 25, 1985, the CNMPC ordered Krzeminski separated from the Navy under other than honorable conditions for reasons of misconduct. On September 16, 1985, the U.S. Bankruptcy Court for the District of Guam granted Krzeminski a release from all dischargeable debts under chapter 7 of the Bankruptcy Code. Four days later, on September 20, 1985, he was formally discharged from the Navy.

## DISCUSSION

The pending motions present two major issues. First, what is the appropriate standard of review of the discharge order issued by the CNMPC? Second, did plaintiff dishonorably fail to pay his just debts (the listed reason for plaintiff's discharge)? [11] For reasons set forth below, the court concludes that whether it considers all of the

11. Krzeminski also argues that he was discharged in violation of § 525 of the Bankruptcy Code, 11 U.S.C. § 525 (Supp. III 1985). Section 525(a) provides, in relevant part:

[A] governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy

materials newly submitted in this court, or limits its review of the CNMPC's decision to the record upon which that officer based his decision, Krzeminski's discharge for dishonorably failing to pay just debts was not supported by substantial evidence.

*Standard of Review*

This court may reverse an agency action only upon a showing that there has been substantial noncompliance with statutes and regulations, that the action on the part of the government officials involved was arbitrary or capricious, or that there was not substantial evidence supporting the action. *Morrow v. United States,* 227 Ct.Cl. 290, 296, 647 F.2d 1099, 1102, *cert. denied,* 454 U.S. 940, 102 S.Ct. 475, 70 L.Ed.2d 247 (1981); *California Canners & Growers Ass'n v. United States,* 9 Cl.Ct. 774, 782–83 (1986). Moreover, for this court to reverse a finding by the Secretary of a military service or by a correction board concerning fitness for military duty, the evidence that the finding was arbitrary or capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations must be clear and convincing. *Wronke v. Marsh,* 787 F.2d 1569, 1576 (Fed.Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 188, 93 L.Ed.2d 121 (1986); *Armstrong v. United States,* 205 Ct.Cl. 754, 761 (1974); *Stewart v. United States,* 197 Ct.Cl. 472, 484 (1972); *Terrell v. United States,* 7 Cl.Ct. 171, 174 (1984), *aff'd,* 785 F.2d 323 (Fed.Cir.1985), *cert. denied,* — U.S. —, 107 S.Ct. 129, 93 L.Ed.2d 73 (1986).

Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

Plaintiff argues that the government violated § 525 by discharging him on the basis of his bankruptcy or, alternatively, on the basis of debts that were dischargeable in bankruptcy.

Because the court finds that the CNMPC decision to discharge Krzeminski on the basis of a dishonorable failure to pay just debts was not supported by substantial evidence, the court need not reach the question of the applicability of § 525.

In making that determination here, the court must first identify the record that is subject to review. Is the court limited to the material that was before the CNMPC, or may it consider materials and arguments submitted by either or both parties since that decision? The result is somewhat confused in this case because not only did Krzeminski sign a waiver of a right to review by an administrative discharge board, but there has also been no review by the Board for Correction of Naval Records (BCNR).

Defendant puts forward two arguments. First, it asks the court to consider a record composed of six volumes, which it states "were put together to make the record complete before this court." Transcript of Oral Argument at 75.[12] Next it argues that Krzeminski should be barred from advancing any argument or evidence at all, or from in any way challenging his discharge, because he allegedly waived any administrative review. The arguments are related.

■ In the context of challenges to military discharge proceedings, there is no requirement of exhaustion of administrative remedies prior to pursuit of judicial review in the Claims Court. *Heisig v. United States*, 719 F.2d 1153, 1155 (Fed. Cir.1983); *Doyle v. United States*, 220 Ct.Cl. 285, 311, 599 F.2d 984, 1000, *opinion modified*, 220 Ct.Cl. 326, 609 F.2d 990 (1979), *cert. denied*, 446 U.S. 982, 100 S.Ct. 2961, 64 L.Ed.2d 837 (1980); *Poe v. United States*, 7 Cl.Ct. 40, 42 (1984) (stating that resort to military correction board procedures is permissive, not mandatory). *But see Diliberti v. Brown*, 583 F.2d 950, 951

(7th Cir.1978) (requiring the exhaustion of administrative remedies before seeking judicial relief). Once a party has availed himself of the administrative process, however, he is bound by it unless the decision is unsupported by substantial evidence, is arbitrary or capricious, or is contrary to law. *Doyle*, 599 F.2d at 1000. The practical effect is that normally, judicial review of administrative review board actions is limited to the record developed before the corrections board. *Long v. United States*, 12 Cl.Ct. 174, 176 (1987); *Terrell*, 7 Cl.Ct. at 175 n. 2. New evidence is allowed only if it was unavailable below or if plaintiff makes a " 'strong showing of bad faith or improper behavior' that creates 'serious doubts about the fundamental integrity' of the administrative action." *Long*, 12 Cl.Ct. at 176, 177 n. 2 (quoting *Sierra Club v. Costle*, 657 F.2d 298, 390 (D.C.Cir.1981)).

What makes the present situation unique is that there has been no administrative appeal process. This is not the typical case in which the court is reviewing a decision of a military records correction board. Defendant's position is not clear with respect to what materials may be reviewed by the court under these circumstances and what the effects are of Krzeminski's non-exercise of his administrative review rights. By submitting substantial materials beyond the few items considered by the CNMPC,[13] defendant is apparently taking the view that, at least where there has been an alleged waiver, *it* may supplement the record while plaintiff may not.

■ At the outset, the court holds that, to the extent defendant relies on a waiver

---

**12.** Defendant stated at oral argument:

I believe that in an uncontested discharge the separating authority has access to the personnel records and the military records of the individual, but in an uncontested discharge they do not necessarily review these documents. These other documents are certainly available for their review. As to whether the [CNMPC] actually looked at his service record or not I really do not know. The rest of these records are his service records, complete record of his—the other appendices were put together to make the record complete before this Court.

For instance appendix 3 is the bankruptcy materials. Regulations are here. Putting a

record together which would put the law before the Court and put all the related materials before the Court.
Transcript of Oral Argument at 75.

**13.** Defendant represented at oral argument that the administrative record upon which the CNMPC based his decision was composed only of the documents appearing in Defendant's App. I at 166–204. Defendant also stated that the separating authority had access to Krzeminski's personnel and military records, but was unsure if the separating authority actually looked at these records. *See supra* note 12.

of administrative remedies to limit a military member's right to challenge a discharge or to present new evidence or argument to this court, the court may accept argument and evidence going to the effectiveness of the waiver. If Krzeminski's waiver of his right to an administrative discharge board was ineffective, he would still have a right to review in either an administrative discharge board, the BCNR, or the Claims Court.

For two reasons, the court does not agree with defendant's argument that, assuming the waiver of administrative remedies was effective, Krzeminski is forever barred in this forum from challenging the discharge. Although the law under these unique circumstances is not clear, the court believes that Krzeminski could challenge in this court the correctness of the discharge based on the record before the deciding official. First, the waiver forms make no mention of a potential waiver of non-administrative review. Second, the decisions of the Court of Claims and the Federal Circuit state that there is no requirement of exhaustion of administrative remedies. *See, e.g., Heisig,* 719 F.2d at 1155; *Doyle,* 220 Ct.Cl. at 311, 599 F.2d at 1000. *But cf. Maier v. Orr,* 754 F.2d 973, 984 (Fed.Cir. 1985) (dictum). For that principle to have any meaning, a waiver of administrative remedies would not, absent a specific tie to court remedies, bar review here. A corollary of that conclusion, however, must be that one who has waived the right to make an administrative record has to rely here on the evidentiary record before the deciding official. *Cf. Doyle,* 599 F.2d at 1000–01; *Long v. United States,* 12 Cl.Ct. 174, 176–77 (1987). If Krzeminski's waiver was effective, he would be deemed to have "availed himself of the administrative process" and would not be able to present new evidence in this court. *See Doyle,* 599 F.2d at 1000–01.

Although not necessary to the result,[14] the court first considers the effectiveness of the waivers signed by plaintiff.

The June 27, 1985 waiver was signed by Krzeminski immediately after he was released from psychiatric evaluation. Krzeminski states, without contradiction, that after being released from the hospital, he was directed to the Legal Officer at NAVCAMS. The waiver form was placed in front of him and he was told to sign it. Despite telling the Legal Officer that he did not want to sign the form because he was unable to concentrate, Krzeminski was pressured into signing the document. Defendant has chosen not to contradict Krzeminski's sworn statement to this effect. Waivers of rights must be voluntary, knowing, and intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences. *See Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970). Under these circumstances, the court finds that the June 27th waiver was ineffective. *Cf. Robinson v. Resor,* 469 F.2d 944 (D.C. Cir.1972) (holding that plaintiff's discharge from the Army under other than honorable conditions on the basis of a letter of resignation obtained from plaintiff while under psychiatric care denied him procedural and substantive due process).

The August 12, 1985 waiver was signed by plaintiff after he had been advised by a Navy JAG attorney that administrative discharge boards convened by the command would not render a fair judgment. Based on the strong presumption of good faith on the part of administrative officials, *Sanders v. United States,* 219 Ct.Cl. 285, 302, 594 F.2d 804, 813 (1979); *Boyle v. United States,* 207 Ct.Cl. 27, 34, 515 F.2d 1397, 1401 (1975); *Petrick v. United States,* 12 Cl.Ct. 700, 704 (1987), this court assumes that the attorney's advice was erroneous. It was certainly not unreasonable, however, for Krzeminski to rely on the representations of a government attorney whose very role it was to give him advice. Accordingly, Krzeminski did not execute an intelligent waiver of his right to an administrative discharge board;

---

**14.** As discussed *infra,* even in the absence of consideration of Krzeminski's new submissions relating to the alleged waiver, neither the record considered by the CNMPC, nor defendant's additional submissions, contain substantial evidence to support the grounds of discharge.

the waiver was not effective. *See Fairchild v. Lehman*, 814 F.2d 1555, 1559–60 (Fed.Cir.1987).

Because neither the June 27, 1985 nor the August 12, 1985 waivers signed by Krzeminski were effective, he is entitled to challenge his administrative discharge and to advance new evidence and argument to support that challenge.[15] Having concluded that the court may consider Krzeminski's challenge, the court advances to the question of whether the CNMPC's decision requires reversal.

*Dishonorable Failure to Pay Just Debts*

Plaintiff was discharged from the Navy on September 20, 1985 based upon "a pattern of misconduct as exemplified by ... [a]n established pattern of dishonorable failure to pay just debts." Naval Military Personnel Manual art. 3630600, ¶ (1)(a)(2)(b)(1) (1984). The Navy regulation under which plaintiff was discharged derives from Article 134 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (1982).[16] *See* Manual for Courts–Martial, United States, 1984, part IV, ¶¶ 60, 71 (Exec. Order No. 12,473, 49 Fed.Reg. 17,-152, 17,390, 17,398 (1984)) [hereinafter Manual for Courts–Martial]. *See generally Parker v. Levy*, 417 U.S. 733, 743–48, 94 S.Ct. 2547, 2555–57, 41 L.Ed.2d 439 (1974) (providing background on the development of Article 134).

Krzeminski does not contend that any of his debts were unjust. In addition, his failure to pay those debts is not in contention. The court is faced only with the question of whether Krzeminski's actions were dishonorable.

The Manual for Courts-Martial, part IV, ¶ 71, defines a "dishonorable" failure to pay a just debt:[17] "More than negligence in nonpayment is necessary. The failure to pay must be characterized by deceit, evasion, false promises, or other distinctly culpable circumstances indicating a deliberate nonpayment or grossly indifferent attitude toward one's just obligations." Defendant cites this definition to support its conclusion that dishonorable failure to pay covers the circumstances of a person with ability to pay who refuses to pay his uncontested debts or a person with limited ability to pay who undertakes financial obligations without regard to his ability to meet those obligations. Defendant's conclusion, however, fails to consider the long line of military court cases interpreting UCMJ Article 134 and the elements of the "dishonorable failure to pay just debts" offense.[18]

15. Defendant also argues that because Krzeminski actively sought discharge through correspondence to Representative Charles E. Bennett of Florida and Senator Edward M. Kennedy of Massachusetts, he implicitly agreed to the administrative discharge process and waived any right to review. When read in context, however, Krzeminski's letters, sent in June and July 1985, do not constitute an agreement to the process, merely an acknowledgement of its inevitability and a desire to leave NAVCAMS. These statements do not imply agreement with that process or a waiver of the right to review.

16. Article 134 of the UCMJ provides:
Though not specifically mentioned in this chapter, all disorders and neglects to the prejudice of good order and discipline in the armed forces, all conduct of a nature to bring discredit upon the armed forces, and crimes and offenses not capital, of which persons subject to this chapter may be guilty, shall be taken cognizance of by a general, special, or summary court martial, according to the nature and degree of the offense, and shall be punished at the discretion of that court.

17. The *Manual for Courts-Martial* defines the offense of dishonorable failure to pay a just debt. The Navy regulation under which plaintiff was discharged, however, permits punishment of an established pattern of dishonorable failure to pay just debts. Consequently, Krzeminski could not be discharged under the Navy regulation if he had dishonorably failed to pay one debt. "It is established beyond peradventure that the military, like any other agency, is bound by its own regulations." *Martin v. Secretary of the Army*, 455 F.Supp. 634, 638 (D.D.C. 1977).

18. The military court cases that delineate the elements of the "dishonorable failure to pay just debts" offense all deal with officers and enlisted men appealing the decision of a court martial. Although Krzeminski was administratively discharged from the Navy under other than honorable conditions—court martial proceedings were not instituted against him—he was involuntarily separated under the same general offense considered in the military court cases. Consequently, the military courts' interpretation of "dishonorable" and the elements of the offense carry considerable weight. This conclu-

In *United States v. Kirksey*, 6 C.M.A. 556, 20 C.M.R. 272 (1955), the Court of Military Appeals stated that "[u]nless the failure to liquidate an obligation was characterized by some act of willful evasion, bad faith, or false promise, the conduct is not regarded as dishonorable—and therefore not an offense under the Uniform Code." *Id.* at 560. The court concluded that "an affirmatively culpable conduct or attitude" must be present. *Id.* at 561; *see also Stewart v. United States*, 197 Ct.Cl. 472, 501 (1972) (quoting a BCNR report which concludes that a dishonorable failure to pay just debts requires an intent on the part of the accused to deceive or defraud his creditor); *United States v. Bethea*, 3 M.J. 526, 528 (1977) ("The term 'dishonorable,' connotes a mental element closely related to that of a specific intent."); *United States v. Gibson*, 1 M.J. 714, 718 (1975); *United States v. Stevenson*, 30 C.M.R. 769, 774 (1960) ("[T]o make the failure [to pay debts] dishonorable, . . . the debt must have been contracted under false representations or the failure to pay characterized by deceit, evasion, or false promises, and the failure to discharge the obligation continues for an unconscionable period."). The mere failure to pay a debt does not itself establish that the nonpayment is dishonorable. *United States v. Cummins*, 9 C.M.A. 669, 674 (1958); *United States v. Atkinson*, 10 C.M.A. 60, 62 (1958).

In *United States v. Smith*, 1 M.J. 703 (1975), the U.S. Air Force Court of Military Review held that an accused who did not have sufficient funds to repay a specific debt was not guilty of a dishonorable failure to pay a just debt. The court stated, "[M]ere negligent nonpayment, even over a long period of time, does not itself estab-

lish the element of dishonorableness, and one's inability to discharge a debt, contracted without wrongful intention, is a defense to the charge." *Id.* at 706; *see also United States v. Schneiderman*, 12 C.M.A. 494, 496 (1961).

▮ The CNMPC decision to discharge Krzeminski based upon an established pattern of dishonorable failure to pay just debts was not supported by substantial evidence;[19] there is a complete lack of documentation establishing the requisite intent on the part of plaintiff to defraud or deceive his creditors. The court finds that, based upon either a review of the limited record considered by the deciding official or a review of all of the evidence provided to the court by defendant, the only reasonable conclusion that one could reach is that Krzeminski's failure to pay his just debts was not "characterized by deceit, evasion, false promises, or other distinctly culpable circumstances indicating a deliberate nonpayment or grossly indifferent attitude" toward his debts. Manual for Courts-Martial, part IV, ¶ 71.

The administrative record does contain one circumstance that Krzeminski's division officer claimed constituted a "dishonorable" failure to pay a just debt.[20] On January 15, 1985, Krzeminski allegedly promised to make a payment to one of his creditors yet failed to follow through on this promise. As stated in a memorandum dated February 25, 1985 signed by his division officer (W.J. Ryan):

> [Krzeminski] has also put a false statement in writing concerning his payment schedule to Beneficial California Inc. Additionally, he perpetrated a hoax by bringing in a money order and showing it

---

sion is supported by the fact that defendant cites the *Manual for Courts-Martial* (which defines the UCMJ Article 134 offense) for its interpretation of a "dishonorable failure to pay just debts."

**19.** "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,' . . . even if two inconsistent conclusions might be inferred from the same evidence." *California Canners & Growers Ass'n v. United States*, 9 Cl.Ct. 774, 783 (1986) (citations omitted) (quoting *Consolidated*

*Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)); *see also Hambsch v. United States*, 12 Cl.Ct. 744, 753 (1987); *Hilo Coast Processing Co. v. United States*, 7 Cl.Ct. 175, 176–77 (1985), *rev'd on other grounds*, 816 F.2d 629 (Fed.Cir.1987).

**20.** Defendant does not rely on this particular circumstance in arguing that Krzeminski dishonorably failed to pay just debts. The court deems, however, that a discussion of this circumstance is warranted.

to me on 15JAN85, and stating that he was making his payment to Beneficial California Inc. He in fact did not mail the money order or make his scheduled payment.

This incident would not constitute a dishonorable failure to pay just debts. A mere failure to keep a promise to pay a debt is not itself dishonorable unless made with a fraudulent or deceitful purpose in order to evade payment. *United States v. Gibson,* 1 M.J. 714, 718 (1975); *see also United States v. Borner,* 25 M.J. 551 (AFCMR 1986); *United States v. Duckworth,* 25 M.J. 550 (AFCMR 1986). Consequently, the fact alone that Krzeminski failed to keep a written promise (the payment schedule) to Beneficial would not constitute a dishonorable failure to pay in the absence of some fraudulent or deceitful purpose to evade payment; defendant does not allege any such purpose. On the contrary, Krzeminski did not meet his payment schedule because his bankruptcy attorney advised him to cease making payments to creditors.

Moreover, the division officer violated Navy personnel regulations by ordering Krzeminski to show him, and then mail, a money order made payable to Beneficial. Article 6210140(2) of the Naval Military Personnel Manual provides:

> From inception to final settlement, the responsibility for an obligation rests solely with the creditor and the debtor. *The extent to which commanding officers may cooperate with creditors is limited to administrative referral of correspondence to the member.* The commanding officer shall ensure that the member concerned communicates his/her *intentions* in the matter to the creditor.

Naval Military Personnel Manual art. 6210140(2) (emphasis added). Krzeminski's division officer became improperly involved in the debt collection process by ordering him to pay Beneficial; the officer was limit-

ed to ensuring that Krzeminski communicated his intentions. Because Krzeminski's alleged dishonorable conduct regarding the mailing of a money order to his creditor resulted from the division officer's violation of regulations, the use of this incident as evidence of plaintiff's dishonorable failure to pay just debts is highly questionable.

Besides the January 15, 1985 incident described, and discounted, above, defendant has provided no evidence of a culpable intent to defraud or deceive creditors; no such evidence appears in any of the documents furnished to the court. Krzeminski's actions—writing letters to creditors to reschedule overdue debt payments, contacting a bankruptcy attorney, obtaining budget counseling from the Navy—indicate an honest attempt, given his limited financial capabilities, to discharge his debt obligations. These actions are inconsistent with a contention that his conduct was "characterized by deceit, evasion, false promises," or gross indifference. Manual for Courts–Martial, part IV, ¶ 71; *see United States v. Smith,* 1 M.J. 703, 706 (1975).

## CONCLUSION

For the foregoing reasons, the court concludes that there is no substantial evidence to support the discharge. Plaintiff's cross-motion for partial summary judgment is granted and defendant's motion is denied. Accordingly, Michael M. Krzeminski is entitled to have his records corrected to show that he constructively served on active duty in the Navy from the date of his improper discharge (September 20, 1985) to the date of this opinion and is entitled to all back pay, allowances, and benefits for that period of constructive active duty service.[21] Furthermore, Krzeminski is entitled to reinstatement to active duty. The Secretary of the Navy is hereby

---

21. Although not requested by either party, the court has considered the possibility of remand to the BCNR or to the Secretary of the Navy (to convene an administrative discharge board). *See, e.g., Hilo Coast Processing Co. v. United States,* 7 Cl.Ct. 175, 194–95 (1985) (ordering remand to the Secretary of Agriculture), *rev'd on other grounds,* 816 F.2d 629 (Fed.Cir.1987); *Poe v. United States,* 7 Cl.Ct. 40, 42–43 (1984) (ordering remand to the Air Force Board for the Correction of Military Records). Based on the circumstances of this case, the court does not believe that remand is appropriate. The factual and procedural record is sufficient for the court to rule and the respective positions are clearly articulated.

directed to accomplish the above corrections in Krzeminski's records.

The parties are directed to file a stipulation as to the amount of recovery, in accordance with the above, within 45 days from the date of this opinion. Absent the parties' agreement, further proceedings will be scheduled to determine the amount due plaintiff.